**S. AMANDA MARSHALL, OSB #95347**
United States Attorney
District of Oregon
**ADRIAN L. BROWN, OSB #050206**
adrian.brown@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone:    (503) 727-1003
Facsimile:    (503) 727-1117

**STEVEN H. ROSENBAUM**
Chief
**TIMOTHY J. MORAN**
Deputy Chief
**BURTIS M. DOUGHERTY**
burtis.m.dougherty@usdoj.gov
**JULIE J. ALLEN**
julie.allen@usdoj.gov
Trial Attorneys
United States Department of Justice
Civil Rights Division
Housing & Civil Enforcement Section
950 Pennsylvania Ave. NW-G Street
Washington, D.C. 20530
Telephone:    (202) 514-4713
Facsimile:    (202) 514-1116
          Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**UNITED STATES OF AMERICA,**                 Civil No.      3:11-CV-01191-PK

          **Plaintiff,**

          and

1

**FAIR HOUSING COUNCIL OF OREGON,**

      **Plaintiff-Intervenor**

      **v.**

**MONTAGNE DEVELOPMENT, INC.,**
**MULTI/TECH ENGINEERING SERVICES, INC.,**       **CONSENT ORDER AND**
**DAVID A. MONTAGNE, WILLIAM D. JONES,**       **JUDGMENT**
**DAV II INVESTMENT GROUP, LLC,**
**AND GATEWAY II LLC,**

      **Defendants; and**

**GATEWAY I LLC,**

      **Rule 19 Defendant.**

## I.    INTRODUCTION

**A.   Background**

    1.     Defendants Montagne Development, Inc., David A Montagne, William D. Jones, DAV II Investment Group, LLC, and Gateway II LLC, ("Montagne Defendants") and Rule 19 Defendant Gateway I LLC, agree to the terms of this Consent Order, resolving this action filed by Plaintiff United States.

    2.     This action is brought by the United States, and the Fair Housing Council of Oregon as plaintiff-intervenor, to enforce provisions of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 - 3619. Specifically, the United States' Complaint alleges the Montagne Defendants have engaged in a pattern or practice of discrimination against persons with disabilities and have denied rights to a group of persons because of disability by failing to design and construct Gateway Village Apartments ("Gateway Apartments"), located in Salem, Oregon, with the features of accessible and adaptive design and construction required by subsections 804(f)(1), 804(f)(2) and 804(f)(3)(C) of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C). For

2

purposes of this Consent Order, the United States and the Montagne Defendants agree Gateway

Apartments is subject to the accessible design and construction requirements of the FHA, 42

U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C). The Montagne Defendants have denied they have

engaged in a pattern or practice of discrimination in violation of the Fair Housing Act, violated

any provisions of the American with Disabilities Act, the Oregon Fair Housing Act or committed

any form of common-law negligence in the construction and operation of the Gateway

Apartments.

**B.      The Montagne Defendants**

3.      Montagne Development, Inc., was the contractor responsible for the construction

of Gateway Apartments.

4.      David A. Montagne and William David Jones were General Partners in the "Dav

II Investment Group," an Oregon General Partnership.

5.      Dav II Investment Group was the initial developer of the property, owning the

land from the pre-development stage until the property was divided into two parcels and sold in

October, 2003. Dav II was initially a general partnership and later became a Limited Liability

Corporation (LLC).

6.      Gateway II, LLC, was the owner of record for "Phase II" of the property since

October, 2003, and throughout construction.

**C.      Rule 19 Defendant**

7.      Gateway I, LLC, has been the owner of record for "Phase I" of the property since

October 16, 2003. Although Gateway I, LLC was not involved in the design and construction of

Phase I, it controls access to the property and is a necessary party to this action under Fed. R.

Civ. P. 19(a)(1)(A).

3

D.     **Relevant Requirements of the Fair Housing Act**

8.     The FHA provides, for non-elevator residential buildings with four or more

dwelling units, all ground-floor units that are designed and constructed for first occupancy after

March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of

accessible and adaptive design to make such units accessible to or adaptable for use by a person

who has or develops a disability.  42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

9.     The accessible and adaptive design provisions of the FHA require that covered

multifamily dwellings be designed and constructed such that:  (i) the public use and common use

portions of such dwellings are readily accessible to and usable by persons with a disability; (ii)

all of the doors designed to allow passage into and within all premises within such dwellings are

sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all

premises within such dwellings contain the following features of adaptive design:  (I) an

accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats,

and other environmental controls in accessible locations; (III) reinforcements in bathroom walls

to allow later installation of grab bars; and (IV)  usable kitchens and bathrooms such that an

individual using a wheelchair can maneuver about the space.  42 U.S.C. § 3604(f)(3)(C).  These

features are referred to herein as the "Accessible Design Requirements."

10.     For the purposes of this Consent Order, the parties agree Gateway Apartments

was designed and constructed for first occupancy after March 13, 1991, and therefore all of the

ground-floor units in non-elevator buildings at Gateway Apartments are "covered multifamily

dwellings" within the meaning of the FHA, 42 U.S.C. §§ 3604(f)(7)(A) and (B).  As such, those

units and the public and common use areas, including the accessible pedestrian routes to those

covered multifamily dwellings at Gateway Apartments, must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

**E.      Gateway Apartments**

11.      Gateway Apartments is an apartment and rental townhome property constructed after March 13, 1991.  Gateway Apartments is comprised of seven (7) multi-level townhouses and 29 multi-story, non-elevator, multifamily buildings which each contain between four (4) and twelve (12) dwelling units per building, totaling 275 units.   Gateway Apartments contains 112 "covered multifamily dwellings."  The ground-floor apartments and the public and common use areas of Gateway Apartments, which include a leasing office, a clubhouse, a swimming pool, pedestrian walkways, mailboxes, and parking spaces, are subject to the Accessible Design Requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

12.      The United States has inspected Gateway Apartments and has specifically identified alleged failures to meet the Accessible Design Requirements at this property.  The United States alleges, among other things, the following violate the Accessible Design Requirements of the FHA:

> (a) there are routes from the public parking areas to numerous building entrances with abrupt level changes (such as steps and barrier curbs), running slopes in excess of 5% and cross slopes greater than 2%;
>
> (b) there are no accessible routes connecting covered ground floor units with some common use features, including the trash dumpster, the two mailbox locations, and some storage units;
>
> (c) there are no accessible carport spaces or detached garages;
>
> (d) there are no accessible parking spaces at the recreation building, leasing office, some mailboxes, or the dumpster;
>
> (e) there are no cane detection barriers below the stairways serving upstairs units;

(f) in the recreation building, the kitchen sink, paper towel dispenser, peninsula/bar seating counter, and thermostat are inaccessible;

(g) the restrooms in the recreation/leasing building lack compliant clear floor space at the toilets and seat cover dispensers, and the roll-in showers and saunas are not accessible, lacking adequate clear floor space, accessible controls, and, in the showers, compliant grab bars;

(h) all the doors designed to allow passage into and within all premises within ground floor units at Gateway Apartments are not sufficiently wide to allow passage by handicapped persons in wheelchairs;

(i) in all ground floor units, the thresholds at the patio doors are too high and are not beveled;

(j) the kitchens do not provide room for an individual in a wheelchair to maneuver about the space, including a lack of a 30x48 inch centered clear floor space in front of various appliances and fixtures; and

(k) the bathrooms do not provide space required for an individual in a wheelchair to maneuver about the space, including a lack of a centered 30x48 inch centered clear floor space in front of the sink, toilet and shower.

**F.    Consent of the Parties to Entry of this Order**

13.    The Montagne Defendants agree to bring Gateway Apartments into compliance with the FHA as set forth herein.

14.    The parties agree this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a) & (b).  The parties further agree this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial.

15.    As indicated by the signatures appearing below, the parties agree to the entry of this Consent Order.

It is hereby ORDERED, ADJUDGED, and DECREED:

## II.    GENERAL INJUNCTION

16.    The Montagne Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them are enjoined from discriminating on the basis of disability as prohibited by the FHA, 42 U.S.C. §§ 3604(f)(1) - (3).

## III.    CORRECTIVE ACTIONS/RETROFITS

### A.    Access to Gateway Apartments

17.    Gateway I, LLC, and Gateway II, LLC, ("Gateway Owners") agree to allow counsel for the United States reasonable access to the common and public use areas of Gateway Apartments and, to the extent possible, reasonable access to Gateway Apartments unit interiors, for the purpose of planning, evaluating, and performing any modification required under this Order, and for the purpose of interviewing or meeting with residents or tenants at Gateway Apartments to aid in the implementation or completion of this Consent Order.

### B.    Retrofits to Accessible Pedestrian Routes and to Other Public and Common Use Areas

18.    The Montagne Defendants recognize portions of the accessible pedestrian routes and the other public and common use areas of Gateway Apartments do not meet the Accessible Design Requirements of the FHA. The Montagne Defendants agree to take the corrective actions necessary to bring the accessible pedestrian routes and the other public and common use areas of Gateway Apartments into compliance with the FHA by completing the retrofits described in Appendix A and by taking the actions described below.

19.     As soon as reasonably possible, but by no later than eighteen (18) months from the entry of this Order, the Montagne Defendants shall begin and finish all of the retrofits listed in <u>Appendix A</u>.

**C.     Retrofits to Ground-Floor Dwelling Unit Interiors**

20.     The Montagne Defendants recognize portions of the ground-floor dwelling unit interiors of Gateway Apartments do not meet the Accessible Design Requirements of the FHA. The Montagne Defendants agree to take the corrective actions necessary to bring any non-compliant ground-floor unit into compliance with the FHA by completing the retrofits described in <u>Appendix B</u> and by taking the actions described below.

21.     As soon as reasonably possible, but by no later than eighteen (18) months from the entry of this Order, the Montagne Defendants shall begin and finish all of the retrofits listed in <u>Appendix B</u>.

22.     Within twenty (20) days from the date of the entry of this Order, Gateway Owners shall provide a notice that is substantially equivalent to <u>Appendix C</u> to Gateway Apartments residents in ground-floor apartment units.  The notice shall inform Gateway Apartments residents: (1) the unit may not meet the Accessible Design Requirements of the FHA; (2) if non-compliant, the unit must be retrofitted within eighteen (18) months; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, if necessary, will be provided at no cost to the resident.

23.     Gateway Apartments residents shall request the retrofits in writing, and requests shall be granted by Gateway Owners on a first come, first served basis.  The Montagne Defendants shall complete the retrofits within forty-five (45) days from the date on which the

retrofits were requested by a resident, with such deadline being subject to paragraph 21 of this Consent Order.

## IV.    INCONVENIENCE AND OVERNIGHT STAYS FOR RETROFITTING UNIT INTERIORS

24.    Gateway Owners shall endeavor to minimize inconvenience to residents in scheduling and performing retrofits required by this Order to unit interiors at Gateway Apartments.

25.    Gateway Owners will offer any resident of a unit scheduled to undergo a retrofit who will be dislocated from the unit for more than twenty-four (24) hours consecutively a similarly sized furnished unit at Gateway Apartments at no cost.  To the extent any interior retrofit substantially interferes with the occupant's access to essential water, heat, or electricity during the occupant's normal occupancy time, Gateway Owners shall offer the occupant alternative accommodations during the retrofit.  In the event a similarly sized furnished unit at Gateway Apartments is not available, the Montagne Defendants will pay the resident the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day of undue inconvenience or hardship for the resident(s).  Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so the resident can use the money to obtain alternative living accommodations and food while dislocated.

## V.    NOTICE OF RETROFITS TO THE ACCESSIBLE PEDESTRIAN ROUTES AND TO THE PUBLIC AND COMMON USE AREAS

26.    Within twenty (20) days of the entry of this Order, the Gateway Owners shall provide written notice to all residents/tenants at Gateway Apartments stating the retrofits required by this Order will be performed to the accessible pedestrian routes and to the public and

common use areas of Gateway Apartments.  Such notice shall conform to <u>Appendix D</u>.  Gateway

Owners shall certify to the United States in writing the notices have been distributed and shall

describe the manner in which they were distributed within ten (10) days after such distribution.

## VI.    NEUTRAL INSPECTOR

27.    The Montagne Defendants shall enter into a contract with a neutral inspector

("Inspector"), after having been approved by the United States, to conduct on-site inspections of

the retrofits performed under this Order to determine if they have been completed in accord with

the specifications in this Order's <u>Appendices A and B</u>.  The Inspector shall have expertise in the

design and construction requirements of the FHA.

28.    An inspection of Gateway Apartments shall take place within thirty (30) days of

the completion of all of the retrofits to the units, the accessible pedestrian routes, and the public

and common use areas at Gateway Apartments, or as soon thereafter as practicable.  Gateway

Owners shall give the United States at least three (3) weeks' prior notice of the inspection and

shall give the United States an opportunity to have its representative(s) present for the inspection.

29.    The Inspector shall set out the results of the inspection of Gateway Apartments,

including deficits if any, in writing and shall send the report to counsel for the Montagne

Defendants and for the United States.[1]  If the inspection indicates all of the required retrofits

have not been made as specified in the <u>Appendices A and B</u>, the Montagne Defendants shall

correct any deficiencies within sixty (60) days and shall pay for another inspection by the same

Inspector to certify the deficiencies have been corrected.  This process shall continue until the

---

[1]For purposes of this Order, counsel for the United States is Assistant United States Attorney Adrian Brown, or as otherwise directed by the United States.  All reports mentioned in this Order shall be sent to that address via overnight courier.

Inspector certifies all of the necessary retrofits have been made. Defendants shall pay all of the Inspector's reasonable costs associated with these inspections, and such payments shall be made without regard to the Inspector's findings. Upon reasonable notice to Gateway Owners, representatives of the United States shall be permitted to inspect the retrofits made by the Montagne Defendants in accordance with this Consent Order or the third-party inspection reports provided for in this Order, to ensure compliance; provided, however, the United States shall endeavor to minimize any inconvenience caused by such inspections.

## VII.   TRANSFER OF INTEREST IN PROPERY

30.    The sale, foreclosure, or any other transfer of ownership, in whole or in part, whether voluntary or involuntary, of Gateway Apartments shall not affect the Gateway Owners' and the Montagne Defendants' continuing obligation to retrofit Gateway Apartments as specified in this Order. Should an owner of Gateway decide to sell or transfer ownership of Gateway Apartments, in whole or in part, prior to the completion of the retrofits specified in Appendices A and B of this Order, the owner of Gateway will at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective buyer written notice Gateway Apartments is subject to this Order, including specifically the owner's obligations to complete required retrofit work and to allow inspections, along with a copy of this Order; and (b) provide to the United States, by facsimile and first-class mail, written notice of the owner's intent to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address and telephone number.

11

## VIII.   NO RAISING OF RENTS OR FEES

31.      Gateway Owners, their agents and affiliated companies, may not raise the rent or fees of any dwelling unit, or demand any deposit or other fee for a dwelling unit at Gateway Apartments solely because of contemplated or completed retrofits in a dwelling unit.

## IX.      NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

32.      The Montagne Defendants shall maintain, and provide to the United States, the following information and statements regarding any other covered multifamily dwellings intended to be purchased, developed, built, designed, and/or engineered in whole or in part, by any of them or by any entities in which they have a position of control as an officer, director, member, or manager, or have a ten-percent (10%) or larger ownership share, provided, however, such information and statements need to be maintained and/or provided only on projects in which a Montagne Defendant is actually involved, not on those projects in which a Montagne Defendant bids or expresses an interest, but does not become finally involved:

a.      the name and address of the project;

b.      a description of the project and the individual units;

c.      the name, address, and telephone number of the civil engineer(s) involved with the project;

d.      a statement from the civil engineer(s) involved with the project acknowledging and describing his/her knowledge of and training in the requirements of the Fair Housing Act, and in the field of accessible site design and certifying he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the Fair Housing Act;

e.      the name, address and telephone number of the architect(s) who are employed or retained by any Montagne Defendant and are involved with the project;

f.      a statement from all architect(s) who are employed or retained by any Montagne Defendant and are involved with the project, acknowledging and describing his/her knowledge of and training in the requirements of the FHA, 42 U.S.C. § 3406(f)(3)(C) and in the field of accessible site design and certifying he/she has reviewed the architectural plans for the project and the design specifications therein fully comply with the requirements of the Fair Housing Act;

g.      if the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or complex, each of the Montagne Defendants shall obtain, maintain, and provide to the United States upon request, a statement from the site engineer(s) or architect(s) who are employed or retained by any Montagne Defendant and are involved with the project, as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the Fair Housing Act.

## X.    MONETARY DAMAGES TO AGGRIEVED PERSONS

33.    The Montagne Defendants shall pay $48,000 to the Fair Housing Council of Oregon ("FHCO"), an aggrieved person within the meaning of the Fair Housing Act, in full satisfaction of their claims for damages and attorney's fees against the Montagne Defendants. The Montagne Defendants shall send a check for this amount made payable to the Kell, Alterman & Runstein, LLP Lawyer Trust Account to counsel for FHCO within thirty (30) days after the entry of this Consent Order.  Upon receipt of payment, the Fair Housing Council of

13

Oregon will execute and deliver a release of any and all claims, known or unknown, as to each of the Montagne Defendants in the form of Appendix E.

34.     Within thirty (30) days of the entry of this Consent Order, the Montagne Defendants shall deposit $32,000 in an interest bearing account (hereinafter "Settlement Fund") to be used for compensation for Aggrieved Persons identified by the United States and approved by the Court in a subsequent Disbursement Order.  The United States shall submit to the Court a list of those persons it has identified as aggrieved persons and the amounts it recommends be distributed to them from the Settlement Fund for the Court's approval.  The Montagne Defendants agree that they will not exercise the opportunity to object to the United States' recommendation to the Court or to challenge the Court's Disbursement Order.  Within thirty (30) days of the entry of the Disbursement Order, the Montagne Defendants shall cause the Settlement Fund to issue checks in the name of the aggrieved persons.  Those checks will then be sent to counsel for the United States for delivery to the Aggrieved Persons.

35.     Prior to receiving any payment from the account, the recipient shall execute a Release in the form attached as Appendix E.

36.     Any interest accruing in the account shall become part of account and be utilized as set forth herein.

37.     In the event that less than the total amount in the account, including accrued interest, is distributed to Aggrieved Persons, the remainder shall be distributed consistent with the terms of the Disbursement Order to a qualified organization(s) mutually agreed upon by the United States and the Montagne Defendants, subject to the approval of the Court, for purposes of conducting fair housing enforcement and educational activities in the Salem, Oregon, area.

38.     Within fifteen (15) days of the entry of this Order, the Montagne Defendants shall publish the Notice set forth at Appendix F in three editions of The Statesman's Journal and The Oregonian.  This Notice shall be no smaller than three columns by six inches and shall be published on three occasions in the news section.  The publication dates shall be separated from one another by at least twenty-one (21) days, and at least two of the publication dates shall be Sunday.  All of the costs associated with this notice, its publication, and distribution shall be borne by the Montagne Defendants.  Within ten (10) days of each publication date, the Montagne Defendants shall submit a copy of each newspaper containing the Notice to counsel for the United States.

39.     Within fifteen (15) days of the entry of this Order, the Montagne Defendants shall send a copy of the Notice set forth in Appendix F to the organizations listed in Appendix G.

40.     Within fifteen (15) days of the entry of this Order, the Montagne Defendants shall provide a copy of the Notice set forth in Appendix F to all of their current tenants residing in Gateway Apartments.  Within forty-five (45) days of entry of this Order, the Montagne Defendants shall provide to counsel for the United States proof the Notice has been sent.

41.     If not previously produced in the litigation giving rise to this Consent Order, within twenty (20) days of the date of entry of this Consent Order, the Montagne Defendants shall make available to the United States for inspection and copying all rental records for Gateway Apartments for the United States' use in identifying potential aggrieved persons.  Such records shall include but not be limited to:  rental applications, guest cards, current and former tenant lists, current and former tenant files, tenant complaints, and maintenance records and logs.

42.     Nothing in this Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons (such as conducting door-to-door interviews of current tenants).

43.     During the pendency of this Consent Order, the Montagne Defendants shall permit the United States, upon reasonable notice, to review any relevant records which may facilitate its determinations regarding the claims of alleged aggrieved persons.

## XI.     EDUCATIONAL PROGRAM

44.     Within thirty (30) days of the entry of this Order, each Montagne Defendant shall provide a copy of this Order to all their current agents and employees involved in the design and/or construction of Gateway Apartments or other covered multifamily dwelling and secure the signed statement from each agent or employee acknowledging he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement shall be substantially similar to the form of Appendix H. These statements shall be provided to counsel for the United States within ninety (90) days of the entry of this Order.

45.     Within thirty (30) days after the date he or she commences an agency or employment relationship with a Montagne Defendant, each new agent or employee involved in the design and/or construction of Gateway Apartments or other covered multifamily dwelling will be given a copy of this Order and be required to sign the statement acknowledging he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement shall be substantially similar to the form of Appendix H.

46.     The Montagne Defendants shall also ensure they and their employees and agents who have primary management authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing

Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act, (August 1996, Rev. April 1998). The Montagne Defendants and all employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of Gateway Village shall be informed of those portions of the FHA relating to accessibility requirements, reasonable accommodations, and reasonable modifications.

47.    Within ninety (90) days of the entry of this Consent Order, the Montagne Defendants and all employees and agents whose duties, in whole or in part, involve or will involve primary management authority over the development, design and/or construction of multifamily dwellings of the type at issue in this case shall undergo training on the design and construction requirements of the FHA.[2] The training shall be conducted by a qualified individual who has been previously approved by counsel for the United States, and any expenses associated with this training shall be borne by the Montagne Defendants. The Montagne Defendants shall provide to the United States, within thirty (30) days after the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by all Montagne Defendants and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix I.

---

[2] The educational program provided to employees not engaged in design, construction or maintenance, such as sales and rental employees, may focus on the portions of the law that relate generally to accessibility requirements as opposed to technical design and construction requirements.

## XII.  NOTICE OF MONTAGNE DEFENDANTS' NON-DISCRIMINATION POLICY

48.     Within ten (10) days of entry of this Consent Order, Gateway Owners shall post and prominently display in the sales or rental offices of Gateway Apartments a poster no smaller than 10 by 14 inches indicating all dwellings are available for rental on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

49.     All advertising in newspapers and all pamphlets, brochures and other promotional literature regarding Gateway Apartments or any new complexes any Montagne Defendant may develop or construct, shall contain, in a conspicuous location, a statement the dwelling units include features for persons with disabilities required by the federal Fair Housing Act.

## XIII.  NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

50.     The Montagne Defendants shall, on the anniversary of the entry of this Order, submit to the United States a report containing the signed statements of new employees and agents, in accordance with paragraph 45 of this Consent Order, that they have received and read the Order, and had an opportunity to have questions about the Order answered, except that the last report shall be due sixty (60) days prior to the anniversary.

51.     Gateway Owners shall advise the United States in writing within fifteen (15) days of receipt of any written administrative or judicial fair housing complaint against Gateway Apartments, or against any employee or agent of Gateway Owners working at or for Gateway Apartments, regarding discrimination on the basis of disability in housing.  Upon reasonable notice, Gateway Owners shall also provide the United States all information it may request concerning any such complaint.  Gateway Owners shall also advise counsel for the United States, in writing, within fifteen (15) days of the resolution of any complaint.

52.     The Montagne Defendants are required to preserve all records related to this Consent Order for Gateway Apartments.  Upon reasonable notice to the Montagne Defendants, representatives of the United States shall be permitted to inspect and copy any records of the Montagne Defendants or inspect Gateway Apartments and any residential dwelling units at Gateway Apartments bearing on compliance with this Consent Order at any and all reasonable times, provided, however, the United States shall endeavor to minimize any inconvenience to the Montagne Defendants from such inspections.

## XIV.    DURATION OF CONSENT ORDER AND TERMINATION OF LEGAL ACTION

53.     This Consent Order shall remain in effect for thirty (30) months after the date of its entry.  By consenting to entry of this Order, the parties agree in the event a Montagne Defendant engages in any future conduct occurring after entry of this Order which leads to a determination of a violation of the Fair Housing Act, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

54.     The Court shall retain jurisdiction for thirty (30) months from the date of entry of the Consent Order to enforce the terms of the Order or until such time as all of the retrofits in Appendices A and B have been completed and approved by the Inspector, whichever occurs later, at which time the case shall be dismissed with prejudice.  The United States may move the Court to extend the duration of the Order in the interests of justice.

55.     The United States and the Montagne Defendants shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution.  However, in the event of a failure by a Montagne Defendant to perform, in a timely manner, any act required by this Order or otherwise for their failure to act in conformance with any provision thereof, the United States may move

this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or by the failure to perform.

## XV.    TIME FOR PERFORMANCE

56.    Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and the relevant Montagne Defendant or Defendants.

## XVI.    COSTS OF LITIGATION

57.    All parties will bear their own costs and attorney's fees associated with this litigation.

## XVII.    TERMINATION OF LITIGATION HOLD

58.    The parties agree, as of the date of the entry of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described above.  To the extent either party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the party is no longer required to maintain such litigation hold.  Nothing in this paragraph relieves either party of any other obligations imposed by this Consent Order.

## XVIII.    REIMBURSEMENT OF RETROFIT COSTS/EXPENSES

59.    The parties agree that in the event there is a consent order entered by the Court or a judgment resulting from trial that requires defendant Multi/Tech Engineering Services, Inc., ("Multi/Tech") to contribute to a retrofit fund to pay for the retrofitting of accessibility violations identified in Appendices A and B, that fund will be made available to the Montagne Defendants

for conducting the retrofits set forth therein, subject to any requirements for verification or documentation of costs associated with conducting the retrofits identified in <u>Appendices A and B</u> that may be included in any subsequent consent order or judgment.

60.    The Montagne Defendants acknowledge the United States may, in its discretion, seek additional monetary damages and/or retrofits from Multi/Tech which are not currently provided for herein or in <u>Appendices A or B</u>.  The Montagne Defendants further acknowledge any consent order or judgment entered for monies to perform these additional retrofit requirements or to compensate Aggrieved Persons is not payable to the Montagne Defendants, unless otherwise ordered by the Court or pursuant to a contract between Multi/Tech and the Montagne Defendants for the performance of those additional retrofits.  The Montagne Defendants agree to cooperate with the United States to determine costs of any additional retrofits not otherwise identified in <u>Appendices A and B</u>.

61.    FHCO acknowledges it has no right or entitlement to compensation from any subsequent retrofit fund for costs associated with retrofits.

62.    The Montagne Defendants herein grant reasonable access to the United States and its agents to the extent necessary to complete any additional investigation or analysis of potential violations associated with the architectural and design services provided by Multi/Tech.  The Montagne Defendants herein grant reasonable access to Multi/Tech and its agents to perform additional retrofits required in a subsequent consent order or judgment.

SO ORDERED this ____9ᵗʰ____ day of ____May____, 2013.

_____
UNITED STATES DISTRICT COURT JUDGE

21

The undersigned apply for and consent to the entry of this Consent Order this 8th day of May

2013:

KELL, ALTERMAN & RUNSTEIN, LLP

*/s Dennis Steinman*
**DENNIS STEINMAN**, OSB NO. 954250
503/222-3531
**Attorneys for Plaintiff-Intervenor**
**Fair Housing Council of Oregon**

S. AMANDA MARSHALL
United States Attorney
District of Oregon

*/s Julie J. Allen*
**ADRIAN L. BROWN, OSB NO. 050206**
Assistant United States Attorney
503/727-1003

**STEVEN H. ROSENBAUM**
Chief
**TIMOTHY J. MORAN**
Deputy Chief
**BURTIS M. DOUGHERTY**
**JULIE J. ALLEN**
Trial Attorneys
United States Department of Justice
Civil Rights Division
Housing & Civil Enforcement Section
950 Pennsylvania Ave. NW-G Street
Washington, D.C. 20530
Telephone:    (202) 514-4713
Facsimile:    (202) 514-1116

**Attorneys for Plaintiff**
United States of America

KILMER, VOORHEES & LAURICK, PC

*/s Robert C. Muth*
**PETER J. VITEZNIK**, OSB NO. 944540
**ROBERT C. MUTH**, OSB NO. 971710
503/224-0055
**Attorneys for Montagne Defendants**

**APPENDIX A***

**ACCESSIBILITY MODIFICATIONS TO THE ACCESSIBLE PEDESTRIAN ROUTES
AND TO THE PUBLIC AND COMMON USE AREAS AT
GATEWAY VILLAGE APARTMENTS**

*see attached

**APPENDIX B\***

**ACCESSIBILITY MODIFICATIONS TO DWELLING UNIT INTERIORS
AT GATEWAY VILLAGE APARTMENTS**

\*see attached

## APPENDIX C

## NOTICE TO GROUND-FLOOR RESIDENTS

Dear Resident:

This is to advise you, as a result of a settlement in a case brought by the United States against the owners of this apartment complex, we have agreed to modify the ground-floor units at Gateway Village Apartments, to the extent necessary to bring the units in compliance with the Fair Housing Act for people with disabilities. Your unit may be one of those which do not meet the accessible and adaptive design requirements of the Fair Housing Act. The possible modifications include adjusting the thresholds at the patio doors, possible adjustment to the centered floor space in the kitchen and bathroom, possible adjustment to the width of closet doors, reversing of a bathroom door, and the installation of shelving in the patio storage room.

Although your apartment unit will be retrofitted, if necessary, within eighteen (18) months, we want you to know you may request to have your apartment modified now at no cost to you. The actual work will take no longer than ___ days. While we do not anticipate any reason for you to vacate your unit, to the extent the necessary modifications require you to vacate the unit, we will provide you with comparable alternative living arrangements during the retrofits. In scheduling when the repairs will take place, we will take into account your preferences and your convenience.

You should be aware this work must be completed within eighteen (18) months regardless of your intention to stay in your apartment for a longer duration. Please let us know if you are interested in having the work done now and we will provide you with additional information.

The Management

**APPENDIX D**

**NOTICE OF MODIFICATIONS TO THE ACCESSIBLE PEDESTRIAN ROUTES AND
TO THE PUBLIC AND COMMON USE AREAS AT
GATEWAY VILLAGE APARTMENTS**

The federal Fair Housing Act requires the accessible pedestrian routes and the public and common use areas at complexes such as Gateway Village Apartments have certain features of physical accessibility for persons with disabilities.

As a result of recent events, it has been brought to our attention that certain features of the accessible pedestrian routes and of the public and common use areas of Gateway Village Apartments can be modified to provide the required accessibility for persons with disabilities, consistent with the accessibility requirements of the federal Fair Housing Act.   We welcome persons with disabilities as residents and guests at Gateway Village Apartments.  We are writing this notice to let you know that beginning on _____, 2013, contractors will be coming onto the property to begin the process of modifying certain aspects of the accessible pedestrian routes and of the public and common use areas.  We expect the process to last approximately _____ weeks.

Generally, the workers will modify or "retrofit" certain sidewalks, install curb cuts and ramps or modify existing ones, and eliminate some of the steps along certain pathways to certain ground-floor units (including the step into some units).  They will also be making some minor modifications in the clubhouse.  We apologize for any inconveniences you may incur as a result of this work.

If you have any questions regarding these modifications, please contact us at

_____.

## APPENDIX E

## RELEASE OF ALL CLAIMS

In consideration of and contingent upon the payment of the sum of _____ dollars ($ _____), pursuant to the Consent Order entered in *United States v. Montagne, et al.*, case number 11CV1191 PK, United States District Court, District of Oregon, the undersigned hereby releases and forever discharges the Montagne Defendants, as defined in paragraph 1 of the Consent Order, from any and all liability for any claims in contract, tort or otherwise, legal or equitable the undersigned may have against the Montagne Defendants, their officers, directors, members, agents, representatives, assigns or successors arising out of the issues alleged in this action as for the date of the entry of the Consent Order. The undersigned fully acknowledges the payment by Montagne Defendants of the monies recited herein is adequate consideration for this Release. If the undersigned is a corporate entity, whether for profit or not, the designated signor of this Release fully acknowledges and agrees this release of the Montagne Defendants shall be binding on the entity for which the undersigned is executing this Release. The undersigned further acknowledges they have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

This release does not apply to, and shall not release, any claims the person or entity has against Multi/Tech Engineering Services, Inc.

_____
(Signature)

NAME: _____
ADDRESS: _____
_____
DATE: _____

27

## APPENDIX F

## NOTICE TO PUBLIC

On _____, 2013, the United States District Court for the District of Oregon entered a Consent Order resolving litigation brought by the United States Department of Justice and the Fair Housing Council of Oregon involving the Gateway Village Apartments located in Salem, Oregon. The litigation alleged those entities and individuals involved in the design and construction of the Gateway Village Apartments discriminated against tenants and prospective tenants on the basis of disability by allegedly failing to design and construct the Gateway Village Apartments with the elements of accessible and adaptive design required by the Fair Housing Act. Some of the parties to the litigation entered into the Consent Order to avoid costly and protracted litigation. The Consent Order is not an admission of liability by any party.

Under the Consent Order, you may be entitled to receive monetary relief if you:

- Were denied or discouraged from renting an apartment at Gateway Village because of your disability; or

- Were unable to fully enjoy an apartment or public space at Gateway Village because of your disability;

Additional restrictions on any potential recovery may apply, including, but not limited, to establishing when and how you were discouraged from renting an apartment; and providing evidence of complaints you made as a tenant. Any monetary relief afforded is subject to approval by the United States District Court for the District of Oregon.

If you believe you have been discriminated against in any way described above, please contact the United States Department of Justice at: 1-800-896-7743, mailbox number __, or write or send an email to:

United States Department of Justice
Attn: DJ# 175-61-105
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave, NW – G Street
Washington, DC 20530
Email Address: fairhousing@usdoj.gov

Your message or letter must include your name, address and at least one telephone number

where you may be reached.

## APPENDIX G

## ORGANIZATIONS TO RECEIVE NOTICE

Independent Living Resources, Inc.
1839 NE Crouch St.
Portland, OR 97232

State Independent Living Council
500 Summer Street NE E87
Salem, OR 97301

Disability Rights Oregon
610 SW Broadway, Suite 200
Portland, OR 97205

Oregon Law Center
921 SW Washington, Suite 516
Portland, OR 97205

Legal Aid Services of Oregon
1655 State Street
Salem, OR 97301

Northwest ADA Center – Oregon
Lane Independent Living Alliance
99 W. 10th Ave.
Eugene, OR 97401

**APPENDIX H**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER**

On _____, I received a copy of and have read the Consent Order entered

by the federal district court in Portland, Oregon in *United States v. Montagne, et al.*  I have had

all of my questions concerning the Consent Order and concerning the Fair Housing Act answered

to my satisfaction.

_____
(Signature)

_____
(Print name)

_____
(Position)

_____
(Date)

## APPENDIX I

## CERTIFICATION OF FAIR HOUSING TRAINING

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for people with disabilities.  I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.


_____
(Signature)


_____
(Print name)


_____
(Position)


_____
(Date)