**S. AMANDA MARSHALL, OSB #95347**
United States Attorney
District of Oregon
**ADRIAN L. BROWN, OSB #050206**
adrian.brown@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone:    (503) 727-1003
Facsimile:    (503) 727-1117

**STEVEN H. ROSENBAUM**
Chief
**TIMOTHY J. MORAN**
Deputy Chief
**BURTIS M. DOUGHERTY**
burtis.m.dougherty@usdoj.gov
**JULIE J. ALLEN**
julie.allen@usdoj.gov
Trial Attorneys
United States Department of Justice
Civil Rights Division
Housing & Civil Enforcement Section
950 Pennsylvania Ave. NW-G Street
Washington, D.C. 20530
Telephone:    (202) 514-4713
Facsimile:    (202) 514-1116
             Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Civil No.    3:11-cv-01191- PK |
| **Plaintiff,** | |
| and | CONSENT ORDER AND JUDGMENT |

**FAIR HOUSING COUNCIL OF OREGON,**

        **Plaintiff-Intervenor,**

        **v.**

**MULTI/TECH ENGINEERING SERVICES, INC.,**

        **Defendant.**

## I.    INTRODUCTION

**A.    Background**

      1.      Defendant Multi/Tech Engineering Services, Inc. ("Multitech") agrees to the terms of this Consent Order, resolving this action filed by Plaintiff United States.

      2.      This action is brought by the United States, and the Fair Housing Council of Oregon as plaintiff-intervenor, to enforce provisions of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 - 3619.  Specifically, the United States' Complaint alleges that Multitech has engaged in a pattern or practice of discrimination against persons with disabilities and has denied rights to a group of persons because of disability by failing to design and construct Gateway Village Apartments ("Gateway Apartments"), located in Salem, Oregon, with the features of accessible and adaptive design and construction required by subsections 804(f)(1), 804(f)(2) and 804(f)(3)(C) of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).  For purposes of this Consent Order, the United States and Multitech agree Gateway Apartments is subject to the accessible design and construction requirements of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).  Multitech has denied it has engaged in a pattern or practice of discrimination in violation of the Fair Housing Act, violated any provisions of the American with Disabilities Act,

the Oregon Fair Housing Act or committed any form of common-law negligence in the design
and construction of Gateway Apartments.

**B.      Multi/Tech Engineering Services, Inc.**

3.      Multitech was the engineer responsible for the design of the apartment buildings
and the site.

**C.      The Montagne Defendants**

4.      Montagne Development, Inc., was the contractor responsible for the construction
of Gateway Apartments.

5.      David A. Montagne and William David Jones were General Partners in the "Dav
II Investment Group," an Oregon General Partnership.

6.      Dav II Investment Group was the initial developer of the property, owning the
land from the pre-development stage until the property was divided into two parcels and sold in
October, 2003.  Dav II was initially a general partnership and later became a Limited Liability
Corporation (LLC).

7.      Gateway II, LLC, was the owner of record for "Phase II" of the property since
October, 2003, and throughout construction (collectively "Montagne Defendants")

8.      The Court entered a Consent Order on May 9, 2013 resolving the United States'
and FHCO's claims against the Montagne Defendants and Rule 19 Defendant Gateway I, LLC
("Montagne Consent Order").

**D.      Relevant Requirements of the Fair Housing Act**

9.      The FHA provides, for non-elevator residential buildings with four or more
dwelling units, all ground-floor units that are designed and constructed for first occupancy after
March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of

accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

10.    The accessible and adaptive design provisions of the FHA require that covered multifamily dwellings be designed and constructed such that: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all of the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(C). These features are referred to herein as the "Accessible Design Requirements."

11.    For the purposes of this Consent Order, the parties agree Gateway Apartments was designed and constructed for first occupancy after March 13, 1991, and therefore all of the ground-floor units in non-elevator buildings at Gateway Apartments are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. §§ 3604(f)(7)(A) and (B). As such, those units and the public and common use areas, including the accessible pedestrian routes to those covered multifamily dwellings at Gateway Apartments, must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

E.    Gateway Apartments

12.    Gateway Apartments is comprised of seven (7) multi-level townhouses and 29 multi-story, non-elevator, multifamily buildings which each contain between four (4) and twelve

(12) dwelling units per building, totaling 275 units. Gateway Apartments contains 112 "covered multifamily dwellings." The ground-floor apartments and the public and common use areas of Gateway Apartments, which include a leasing office, a clubhouse, a swimming pool, pedestrian walkways, mailboxes, and parking spaces, are subject to the Accessible Design Requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

13.   The United States has inspected Gateway Apartments and Multitech's design plans for the development and has identified specific alleged failures to meet the Accessible Design Requirements in the design and construction of this property. The United States alleges, among other things, the following violate the Accessible Design Requirements of the FHA:

(a) there are routes from the public parking areas to numerous building entrances with abrupt level changes (such as steps and barrier curbs), running slopes in excess of 5% and cross slopes greater than 2%;

(b) there are no accessible routes connecting covered ground floor units with some common use features, including the trash dumpster, the two mailbox locations, and some storage units;

(c) there are no accessible carport spaces or detached garages;

(d) there are no accessible parking spaces at the recreation building, leasing office, some mailboxes, or the dumpster;

(e) there are no cane detection barriers below the stairways serving upstairs units;

(f) in the recreation building, the kitchen sink, paper towel dispenser, peninsula/bar seating counter, and thermostat are inaccessible;

(g) the restrooms in the recreation/leasing building lack compliant clear floor space at the toilets and seat cover dispensers, and the roll-in showers and saunas are not accessible, lacking adequate clear floor space, accessible controls, and, in the showers, compliant grab bars;

(h) all the doors designed to allow passage into and within all premises within ground floor units at Gateway Apartments are not sufficiently wide to allow passage by handicapped persons in wheelchairs;

(i)  in all ground floor units, the thresholds at the patio doors are too high and are not beveled;

(j) the kitchens do not provide room for an individual in a wheelchair to maneuver about the space, including a lack of a 30x48 inch centered clear floor space in front of various appliances and fixtures; and

(k) the bathrooms do not provide space required for an individual in a wheelchair to maneuver about the space, including a lack of a centered 30x48 inch centered clear floor space in front of the sink, toilet and shower.

**F.    Consent of the Parties to Entry of this Order**

14.    The parties agree this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a) & (b).  The parties further agree this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial.

15.    As indicated by the signatures appearing below, the parties agree to the entry of this Consent Order.

**It is hereby ORDERED, ADJUDGED, and DECREED:**

## II.    GENERAL INJUNCTION

16.    Multitech and each of its officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them are enjoined from discriminating on the basis of disability as prohibited by the FHA, 42 U.S.C. §§ 3604(f)(1) - (3).

## III.    NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

17.    Upon the effective date of the Consent Order, Multitech shall maintain, and shall produce or make available for inspection upon reasonable notice from the United States, the following information regarding any architectural or engineering plans or designs prepared by Multitech for covered multifamily dwellings that are prepared after the entry of this Consent

Order, and that are: 1) released for construction; 2) filed with governmental agencies; and/or 3) used for construction, in whole or in part, by Multitech or by any entity(ies) in which Multitech's employees have a position of control as an officer, director, member, or manager, or have a fifty-percent (50%) or larger ownership share:

      a.     the name and address of the property;

      b.     a description of the property and the individual units; and

      c.     a statement certifying that he/she/they has/have reviewed the plans he/she/they has/have prepared for the property and having made reasonable inquiry into all related facts and circumstances certify that, to the best of his/her/their knowledge, the design specifications therein comply with the requirements of the Fair Housing Act, and the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) ("Guidelines"); and

      d.     if the plans are revised by Multitech, and the revisions could have any impact on the accessibility of the dwellings or property, he/she/they will obtain, maintain, and provide to the United States upon request, a statement that all specifications in the revised plans, to the best of his/her/their knowledge, comply with the requirements of the Fair Housing Act and the Guidelines.

## IV.    MONETARY DAMAGES TO AGGRIEVED PERSONS

18.    Multitech shall pay $7,902.70 to the Fair Housing Council of Oregon ("FHCO"), an aggrieved person within the meaning of the Fair Housing Act, in full satisfaction of their claims for damages against Multitech with respect to Gateway Apartments. Multitech shall send a check for this amount made payable to the Kell, Alterman & Runstein, LLP Lawyer Trust Account to counsel for FHCO within thirty (30) days after the entry of this Consent Order. Upon

receipt of payment, the Fair Housing Council of Oregon will execute and deliver a release of any and all claims, known or unknown, as to Gateway Village Apartments in the form of <u>Appendix A.</u> Notwithstanding the provisions of paragraph 2, Multitech agrees that FHCO is a prevailing party for the limited purpose of submitting its attorneys' fees to the District Court. The attorneys for FHCO shall submit a motion to the District Court for its fees and costs. Multitech agrees to pay the amount determined by the District Court to be reasonable attorneys' fees and costs incurred by FHCO in this action.

19.    Within thirty (30) days of the entry of this Consent Order, Multitech shall deposit $32,000 in an interest bearing account (hereinafter "Settlement Fund") to be used for compensation for Aggrieved Persons identified by the United States and approved by the Court in a subsequent Disbursement Order. The United States shall submit to the Court a list of those persons it has identified as aggrieved persons and the amounts it recommends be distributed to them from the Settlement Fund for the Court's approval. Multitech agrees that it will not exercise the opportunity to object to the United States' recommendation to the Court or to challenge the Court's Disbursement Order. Within thirty (30) days of the entry of the Disbursement Order, Multitech shall cause the Settlement Fund to issue checks in the name of the aggrieved persons. Those checks will then be sent to counsel for the United States for delivery to the Aggrieved Persons.

20.    Prior to receiving any payment from the account, the recipient shall execute a Release in the form attached as <u>Appendix A</u>.

21.    Any interest accruing in the account shall become part of account and be utilized as set forth herein.

22.     In the event that less than the total amount in the account, including accrued interest, is distributed to Aggrieved Persons, the remainder shall be distributed consistent with the terms of the Disbursement Order to a qualified organization(s) mutually agreed upon by the United States and Multitech, subject to the approval of the Court, for purposes of conducting fair housing enforcement and educational activities in the Salem, Oregon, area.  The qualified organization(s) receiving the funds shall submit to the United States and Multitech a detailed report on how the funds are utilized within one year of receipt of funds, and every year thereafter until the funds are exhausted.

23.     Nothing in this Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

## V.     PAYMENT TO RETROFIT ACCOUNT

24.     Within thirty (30) days of the date of the entry of this Consent Order, Multitech shall deposit TWENTY ONE THOUSAND DOLLARS ($21,000) into an interest bearing account ("Retrofit Account") to be used by the Montagne Defendants to retrofit Gateway Village pursuant to the terms of the Montagne Consent Order and/or to provide additional retrofits, subject to the approval of the United States.

25.     The Montagne Defendants shall submit invoices to Multitech for costs of performing the retrofits identified in the Montagne Consent Order.  Upon receipt of the invoices, Multitech shall submit payment of the costs within thirty (30) days to the Montagne Defendants.

26.     Any interest accruing in the Retrofit Account shall become part of the account and be utilized as set forth herein.

27.     In the event of any dispute regarding the payment of funds from the Retrofit Account, the dispute shall be submitted to counsel for the United States who in their sole

discretion shall resolve the dispute and direct whether payment shall be made from the Retrofit Account.

28.     The provisions relating to the Retrofit Fund will continue until the funds have been exhausted.

29.     No money from the Retrofit Fund shall be used to compensate aggrieved persons harmed by Multitech's alleged discriminatory conduct.

## VI.     EDUCATIONAL PROGRAM

30.     Within thirty (30) days of the entry of this Order, Multitech shall provide a copy of this Order to all their current agents and employees involved in the design and/or construction of Gateway Apartments or other covered multifamily dwellings and secure the signed statement from each agent or employee acknowledging he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement shall be substantially similar to the form of Appendix B.  These statements shall be provided to counsel for the United States within ninety (90) days of the entry of this Order.

31.     Within thirty (30) days after the date he or she commences an agency or employment relationship with Multitech, each new agent or employee involved in the design and/or construction of Gateway Apartments or other covered multifamily dwelling will be given a copy of this Order and be required to sign the statement acknowledging he or she has received and read the Order, and has had an opportunity to have questions about the Order answered. This statement shall be substantially similar to the form of Appendix B.

32.     Multitech shall also ensure it and its employees and agents who design and/or construct covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United

States Department of Housing and Urban Development <u>Fair Housing Act Design Manual</u>, <u>A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act</u>, (August 1996, Rev. April 1998).

33.     Within ninety (90) days of the entry of this Consent Order, Multitech and all employees and agents whose duties involve or will involve the development, design and/or construction of multifamily dwellings of the type at issue in this case shall undergo training on the design and construction requirements of the FHA.  If Multitech is unable to complete the training within 90 days, Multitech shall inform the United States that the training has been scheduled for a date certain within 120 days of the effective date of this Consent Order, and will promptly provide the certifications once the training has been completed.  The training shall be conducted by a qualified individual who has been previously approved by counsel for the United States, and any expenses associated with this training shall be borne by Multitech.  Multitech shall provide to the United States, within thirty (30) days after the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by Multitech and covered employees and agents confirming their attendance, in a form substantially equivalent to <u>Appendix C</u>.

34.     Within thirty (30) days after the date he or she commences an agency or employment relationship with Multitech, each new agent or employee whose duties involve or will involve the development, design and/or construction of multifamily dwellings of the type at issue in this case shall undergo training on the design and construction requirements of the FHA. The training shall be conducted by a qualified individual who has been previously approved by counsel for the United States, and any expenses associated with this training shall be borne by

Multitech.  Multitech shall provide to the United States in accordance with paragraph 37 the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by Multitech and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix C.

## VII.    NOTICE OF MULTITECH'S NON-DISCRIMINATION POLICY

35.    All plans for covered multifamily dwellings prepared by Multitech that are: 1) released for construction; 2) filed with governmental agencies; and/or 3) used for construction, in whole or in part, by Multitech or by any entity(ies) in which Multitech's employees have a position of control as an officer, director, member, or manager, or have a fifty-percent (50%) or larger ownership share, shall contain, in a conspicuous location, a statement that the dwelling units and public and common use areas include features for persons with disabilities required by the federal Fair Housing Act.

## VIII.    NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

36.    Multitech shall, on the anniversary of the entry of this Order, submit to the United States a report containing the signed statements of new employees and agents, in accordance with paragraphs 30 and 34 of this Consent Order, that they have received and read the Order had an opportunity to have questions about the Order answered and received training on the requirements of the Fair Housing Act, except that the last report shall be due sixty (60) days prior to the anniversary.

37.    Multitech shall advise the United States in writing within fifteen (15) days of receipt of any written administrative or judicial fair housing complaint against Multitech, or against any employee or agent of Multitech, regarding discrimination on the basis of disability in

housing.  Upon reasonable notice, Multitech shall also provide the United States all information it may request concerning any such complaint.  Multitech shall also advise counsel for the United States, in writing, within fifteen (15) days of the resolution of any complaint.

38.     Multitech is required to preserve all records related to this Consent Order.  Upon reasonable notice to Multitech, representatives of the United States shall be permitted to inspect and copy any records of Multitech bearing on compliance with this Consent Order at any and all reasonable times, provided, however, the United States shall endeavor to minimize any inconvenience to Multitech from such inspections.

## IX.     DURATION OF CONSENT ORDER AND TERMINATION OF LEGAL ACTION

39.     This Consent Order shall remain in effect for thirty (30) months after the date of its entry.  By consenting to entry of this Order, the parties agree in the event that Multitech engages in any future conduct occurring after entry of this Order which leads to a determination of a violation of the Fair Housing Act, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

40.     The Court shall retain jurisdiction for thirty (30) months from the date of entry of the Consent Order to enforce the terms of the Order or until such time as all of the Retrofit Fund has been exhausted, whichever occurs later, at which time the case shall be dismissed with prejudice.  The United States may move the Court to extend the duration of the Order in the interests of justice.

41.     The United States and Multitech shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution.  However, in the event of a failure by a Multitech to perform, in a timely manner, any act required by this Order or otherwise for their

failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or by the failure to perform.

## X.    TIME FOR PERFORMANCE

42.    Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and Multitech.

## XI.    COSTS OF LITIGATION

43.    All parties will bear their own costs and attorney's fees associated with this litigation except as provided herein in paragraph 18.

## XII.    TERMINATION OF LITIGATION HOLD

44.    The parties agree, as of the date of the entry of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described above.  To the extent either party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the party is no longer required to maintain such litigation hold.  Nothing in this paragraph relieves any party of any other obligations imposed by this Consent Order.

SO ORDERED this _____20ᵗʰ_____ day of ___August_____, 2013.

_____

ANNA J. BROWN
UNITED STATES DISTRICT JUDGE

Page 14 –   CONSENT ORDER AND JUDGMENT
            *United States, et al. v. Multi/Tech;* Case No. 3:11-cv-01191-PK

The undersigned apply for and consent to the entry of this Consent Order this 20th day of August

2013:

For the Plaintiff-Intervenor FHCO:

KELL, ALTERMAN & RUNSTEIN, LLP

/s Dennis Steinman
**DENNIS STEINMAN**, OSB NO. 954250
503/222-3531
**Attorneys for Plaintiff-Intervenor
Fair Housing Council of Oregon**

For the United States:

S. AMANDA MARSHALL
United States Attorney
District of Oregon

/s Adrian L. Brown
**ADRIAN L. BROWN, OSB NO. 050206**
Assistant United States Attorney
503/727-1003

/s Julie J. Allen
**STEVEN H. ROSENBAUM**
Chief
**TIMOTHY J. MORAN**
Deputy Chief
**BURTIS M. DOUGHERTY**
**JULIE J. ALLEN**
Trial Attorneys
United States Department of Justice
Civil Rights Division
Housing & Civil Enforcement Section
950 Pennsylvania Ave. NW-G Street
Washington, D.C. 20530
Telephone:    (202) 514-4713
Facsimile:    (202) 514-1116

**Attorneys for Plaintiff**
United States of America

**For Multitech Engineering Services, Inc.**

**Martin Bischoff, et al.**

/s Stephen P. Yoshida
Stephen P. Yoshida, OSB 044588
**Attorneys for Defendant Multi/Tech**

Page 15 –   CONSENT ORDER AND JUDGMENT
            *United States, et al. v. Multi/Tech;* Case No. 3:11-cv-01191-PK

## APPENDIX A

### RELEASE OF ALL CLAIMS

In consideration of and contingent upon the payment of the sum of _____ dollars ($

_____), pursuant to the Consent Order entered in *United States v. Multi/Tech Engineering*

*Services, Inc.*, case number 3:11-CV-01191-PK, United States District Court, District of Oregon,

the undersigned hereby releases and forever discharges Multitech Engineering Services, Inc.

from any and all liability for any claims in contract, tort or otherwise, legal or equitable the

undersigned may have against Multitech, their officers, directors, members, agents,

representatives, assigns or successors arising out of the issues alleged in this action with respect

to Gateway Village Apartments as of the date of the entry of the Consent Order.  The

undersigned fully acknowledges the payment by Multitech of the monies recited herein is

adequate consideration for this Release.  If the undersigned is a corporate entity, whether for

profit or not, the designated signor of this Release fully acknowledges and agrees this release of

Multitech shall be binding on the entity for which the undersigned is executing this Release.  The

undersigned further acknowledges they have read and understand this release and have executed

it voluntarily and with full knowledge of its legal consequences.


_____
(Signature)

NAME:       _____

ADDRESS:    _____

            _____

DATE:       _____

**APPENDIX B**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER**

On _____, I received a copy of and have read the Consent Order entered

by the federal district court in Portland, Oregon in *United States v. Multi/Tech Engineering*

*Services, Inc.* I have had all of my questions concerning the Consent Order and concerning the

Fair Housing Act answered to my satisfaction.


_____
(Signature)

_____
(Print name)

_____
(Position)

_____
(Date)

**APPENDIX C**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for people with disabilities.  I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.

_____
(Signature)


_____
(Print name)


_____
(Position)


_____
(Date)