IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

        Plaintiff,

and

FAIR HOUSING COUNCIL OF OREGON,

        Plaintiff-Intervenor,                3:11-cv-01191-PK

v.                                      FINDINGS AND
                                      RECOMMENDATION

MONTAGNE DEVELOPMENT, INC.,
MULTI/TECH ENGINEERING SERVICES,
INC., DAVID A. MONTAGNE, WILLIAM
D. JONES, DAV II INVESTMENT GROUP,
LLC, GATEWAY II, LLC, and GATEWAY
I, LLC,

        Defendants.

PAPAK, Magistrate Judge:

      The matter before the court is plaintiff-intervenor Fair Housing Council of Oregon's

("FHCO") motion for attorneys' fees (#110).  For the reasons set forth below, the FHCO's motion should be granted in part and denied in part and the district court should award the FHCO attorneys' fees in the amount of $47,009.79.

## PROCEDURAL BACKGROUND

The FHCO is a private nonprofit corporation that promotes "equal opportunity in the renting, purchasing, financing and advertising of housing" and seeks to eliminate "all forms of illegal housing discrimination."  Complaint in Intervention, #8, ¶ 10.  In July 2006, the FHCO filed a complaint with the United States Department of Housing and Urban Development ("HUD"), alleging that the Gateway Village Apartments in Salem, Oregon, were not designed or constructed in compliance with the Fair Housing Act, including, for instance, "excessive slopes on required accessible routes, interior doorways that were too narrow, and bathrooms without the required clear floor space."  *Id.* ¶¶ 23, 28, 30.  HUD investigated the complaint and, in August 2011, after conciliation efforts failed, HUD issued a Determination of Reasonable Cause and Charge of Discrimination, finding "reasonable cause exist[ed] to believe that illegal discriminatory housing practices occurred at [the] Gateway" Village Apartments.  Complaint, #1, ¶ 21.  On August 26, 2011, the FHCO "elected to have the claims asserted in [HUD's] Charge of Discrimination resolved in a federal civil action, pursuant to 42 U.S.C. § 3612(a)."  *Id.* ¶ 22.

On September 30, 2011, the United States filed a complaint in the United States District Court for the District of Oregon against: (1) Montagne Development, Inc., the contractor responsible for construction of the Gateway Village Apartments; (2) Dav II Investment Group, the initial developer of the property; (3) David A. Montagne and William D. Jones, the general partners in Dav II Investment Group; (4) Gateway II, LLC, the owner of record during the

Page 2 - FINDINGS AND RECOMMENDATION

construction phase; and (5) Gateway I, LLC, the current owner of record (collectively, the "Montagne defendants"). *Id.* ¶¶ 8-12. The United States also named Multi/Tech Engineering Services, Inc. ("Multi/Tech"), the architect and civil engineer for the Gateway Village Apartments, as a defendant. *Id.* ¶ 7. In the complaint, the United States alleged violations of the federal Fair Housing Act on behalf of the FHCO, an "aggrieved person within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(i)," and any other victims of the defendants' discriminatory policies and practices. *Id.* ¶¶ 16-30. The United States sought declaratory, injunctive, and monetary relief for the FHCO and any other victims.

On October 20, 2011, the FHCO filed a complaint in intervention against the Montagne defendants and Multi/Tech, alleging a negligence claim and violations of the federal Fair Housing Act, the Americans with Disabilities Act, and the Oregon Fair Housing Act. Complaint in Intervention, #8, ¶¶ 45-66. Like the United States, the FHCO sought declaratory, injunctive, and monetary relief.

On July 26, 2012, the parties participated in mediation. Thereafter, the parties continued to work toward an agreeable resolution and participated in a second day of mediation on October 24, 2012. *See* October 10, 2012 Joint Status Report, #35, at 2. Following the second day of mediation, the parties continued discussions in an attempt to resolve the case but no settlement was reached. *See* Declaration of Adrian Brown in Support of Plaintiff's Response to Defendants' Motion to Extend Deadline to Respond to Written Discovery, #45, ¶ 3.

On January 15, 2013, Multi/Tech filed a motion for summary judgment against the United States (#47) and a motion for summary judgment against the FHCO (#51). On March 22, 2013, the FHCO filed its resistance to the motion for summary judgment (#70). In its resistance,

the FHCO withdrew its Americans with Disabilities and common-law negligence claims against Multi/Tech, leaving only the federal Fair Housing Act and Oregon Fair Housing Act claims.

Meanwhile, the United States, the FHCO, and the Montagne defendants continued to negotiate a settlement. On May 9, 2013, the district court signed a consent order and judgment resolving the United States and the FHCO's claims against the Montagne defendants. The consent order required the Montagne defendants to, among other things, retrofit the Gateway Village Apartments, pay the FHCO $48,000 for damages and attorneys' fees, and deposit $32,000 into an account to be used for the compensation of other aggrieved persons identified by the United States. The consent order did not resolve the claims against Multi/Tech.

On June 11, 2013, the court heard oral argument on Multi/Tech's motions for summary judgment. Prior to the court issuing a ruling on the motions for summary judgment, the parties agreed to another day of mediation, after which they reported to the court that they had reached a settlement. On August 20, 2013, the district court signed a consent order and judgment, pursuant to which Multi/Tech was required to, among other things, deposit $21,000 into an account to be used by the Montagne defendants to retrofit the Gateway Village Apartments, pay the FHCO $7,902.70 for damages, and deposit $32,000 into an account to be used for the compensation of other aggrieved persons identified by the United States. The consent order further provides:

> Multitech agrees that FHCO is a prevailing party for the limited purpose of submitting its attorneys' fees to the District Court. The attorneys for FHCO shall submit a motion to the District Court for its fees and costs. Multitech agrees to pay the amount determined by the District Court to be reasonable attorneys' fees and costs incurred by FHCO in this action.

Multi/Tech Consent Order and Judgment, #109, at 8.

Page 4 - FINDINGS AND RECOMMENDATION

On September 16, 2013, the FHCO filed the instant motion for attorneys' fees, requesting that the court order Multi/Tech to pay $182,518.19 in reasonable attorneys' fees incurred in litigating this action. On October 15, 2013, Multi/Tech filed a resistance (#122). On October 28, 2013, the FHCO filed a reply (#125). The matter is fully submitted and ready for decision.

## ANALYSIS

### I.    Entitlement to Attorneys' Fees

"Under the American Rule[,] it is well established that attorney's fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" *Summit Valley Indus. Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 721 (1982) (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)). In this case, the federal Fair Housing Act provides:

> In any administrative proceeding brought under this section, or any court proceeding arising therefrom, or any civil action under this section, the administrative law judge or the court, as the case may be, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs.

42 U.S.C. § 3612(p).[1] Under the terms of the consent order and judgment, Multi/Tech agreed that the FHCO qualifies as a "prevailing party" for the purposes of an attorney-fee award. In light of this concession, I find that the FHCO is entitled to its reasonable attorneys' fees incurred in litigating this action. Accordingly, I now turn to consider whether the requested attorneys' fees are reasonable.

/ / /

---

[1]  The Oregon Fair Housing Act also provides that the prevailing party is entitled to its reasonable attorneys' fees. *See* Or. Rev. St. § 659A.885(1).

## II.    Lodestar

Determination of reasonable attorneys' fees begins with the "lodestar," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  In this case, the FHCO relied on the services of attorney Dennis Steinman, attorney Matthew C. Ellis, and attorney Scott Aldworth.  The FHCO requests compensation for 235.65 hours of Steinman's time at a rate of $375 an hour, 1.70 hours of Ellis's time at a rate of $95 an hour,[2] 100.10 hours of Ellis's time at a rate of $260 an hour, and 68.20 hours of Aldworth's time at a rate of $195 an hour.[3]  Accordingly, the FHCO contends that the proper lodestar in this case is $127,855.25.[4]

In its resistance, Multi/Tech raises a number of objections to the FHCO's calculation of the lodestar.  Beyond and in addition to Multi/Tech's objections, the court has a responsibility to scrutinize the FHCO's fee petition independently to determine its reasonableness.  *See, e.g.,* *Gates v. Deukmejian*, 987 F.2d 1392, 1400-01 (9th Cir. 1992).  With this in mind, I now turn to

---

[2]  Prior to graduating from law school, Ellis worked as a law clerk under the supervision of Steinman.  The FHCO seeks compensation for 1.70 hours that Ellis expended as a law clerk.

[3]  In its memorandum in support of the motion for attorneys' fees, the FHCO states that Steinman expended 252.85 hours, Ellis expended 1.70 hours as a law clerk, Ellis expended 100.40 hours as a lawyer, and Aldworth expended 74.50 hours.  These numbers, however, do not take into account the hours the FHCO voluntarily deducted.  *See* Ex. B, Declaration of Dennis Steinman ("Steinman Declaration"), #112-2.  After conducting an independent review of the billing records, I find that the total number of hours expended is 405.65, with 235.65 expended by Steinman, 1.70 expended by Ellis as a law clerk, 100.10 expended by Ellis as a lawyer, and 68.20 expended by Aldworth.

[4]  The FHCO states that "[t]he proper lodestar calculation in this case is $127,153.25." FHCO's Memo. in Support of Motion for Attorneys' Fees, #111, at 10.  It is not clear, however, how the FHCO arrived at this figure.

Page 6 - FINDINGS AND RECOMMENDATION

consider the reasonableness of the number of hours the FHCO's attorneys expended and the reasonableness of the requested hourly rates.

### A.    Hours Reasonably Expended

It is the fee claimant's burden to demonstrate that the number of hours spent was reasonably necessary to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34; *see also Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their . . . claims."); *Chalmers v. City of L.A.*, 796 F.2d 1205, 1211 (9th Cir. 1986) ("The district court is in the best position to determine . . . the number of hours reasonably expended in furtherance of the successful aspects of a litigation . . . ."). Moreover, it is likewise the fee claimant's burden to "submit evidence supporting the hours worked . . . . Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433; *see also, e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007) (same).

In this case, Multi/Tech argues that the number of hours that the FHCO's attorneys expended is unreasonable on the grounds that: (1) the billing records are replete with examples of "block billing"; (2) multiple attorneys often billed for the same task; and (3) there are numerous vague and inadequately described billing entries. Moreover, Multi/Tech argues that the FHCO is not entitled to any attorneys' fees, or, at a minimum, significantly reduced attorneys' fees, because its attorneys merely performed tasks duplicative of those the Department of Justice performed.

/ / /

Page 7 - FINDINGS AND RECOMMENDATION

### 1.    Block Billing

First, Multi/Tech objects to the FHCO's fee petition on the basis that the FHCO's attorneys block billed their time.  The courts of the District of Oregon have for many years acknowledged the problem of block billing attorney time expenditures for fee-petition purposes.  *See, e.g., Frevach Land Co. v. Multnomah Cnty., Dep't of Envtl. Servs., Land Use Planning Div.*, No. CV-99-1295-HU, 2001 WL 34039133, at *9-12 (D. Or. Dec. 18, 2001).  For purposes of fee petitions filed in the District of Oregon, block billing is defined as any time entry of three or more hours containing four or more tasks or, in the alternative, two or more tasks, where at least one of the tasks could have taken anywhere from a small to a substantial amount of time.  *See, e.g., Hells Canyon Pres. Council v. U.S. Forest Serv.*, No. CV-00-755-HU, 2004 WL 1853134, at *8 (D. Or. Aug. 18, 2004); *Taylor v. Albina Cmty. Bank*, No. CV-00-1089-ST, 2002 WL 31973738, at *3 (D. Or. Oct. 2, 2002); *Frevach*, 2001 WL 34039133, at *12.  Notwithstanding the foregoing, closely related but discretely identified block-billed tasks will be aggregated into a single task for purposes of determining whether the District of Oregon's prohibition against block billing has been violated.  *See, e.g., Oberdorfer v. Glickman*, No. CV-98-1588-HU, 2001 WL 34045732, at *6 n.4 (D. Or. Sep. 14, 2001).  Because the practice of block billing systematically impairs the court's ability to ascertain the reasonableness of an attorney's time expenditures, the courts of the District of Oregon have of long standing adopted the practice of eliminating block-billed time entries in their entirety from the lodestar calculation.  *See, e.g., Hells Canyon*, 2004 WL 1853134, at *8.  The facts of this case present no compelling grounds for deviating from that practice here.

Upon review of the time records submitted in support of the fee petition, I find that the

following time entries should be disallowed in their entirety on the basis that they violate the court's prohibition against block billing: 4.00 hours billed by Ellis on 3/8/2012; 3.80 hours billed by Aldworth on 1/18/2013; 5.80 hours billed by Aldworth on 2/21/2013; 3.70 hours billed by Aldworth on 3/20/2013; 5.40 hours billed by Aldworth on 8/21/2013; and 3.80 hours billed by Aldworth on 8/27/2013.  In addition, I find it appropriate to disallow 1.90 of the 3.40 hours Steinman billed on 6/11/2013.  Although this billing entry also violates the court's prohibition against block billing, I have independent knowledge that oral argument, one of the tasks included in the block-billed entry, lasted approximately 1.50 hours and, accordingly, I shall allow 1.50 hours of this entry.

### 2.    Duplication of Effort

Second, Multi/Tech argues that the FHCO's fee petition should be reduced to account for duplication of effort—that is, multiple attorneys billing for performing the same task. "Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). Rather, "'[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.'" *Mardirossian v. Guardian Life Ins. Co. of Am.*, 457 F. Supp. 2d 1038, 1050 (C.D. Cal. 2006) (quoting *Johnson v. Univ. Coll.*, 706 F.2d 1205, 1208 (11th Cir. 1983)).  Thus, when reviewing fee petitions in which multiple attorneys billed hours, courts should carefully review the requested hours to determine whether there was duplication of efforts, giving consideration to, for example, the complexity of the case. *See Democratic Party of Wash. State*, 388 F.3d at 1286-87; *see also Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 768 (5th Cir. 1996)

("'If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted.'" (citation omitted)). For instance, in *Mardirossian*, the United States District Court for the Central District of California found that a plaintiff was not entitled to attorneys' fees for both of his attorneys to attend mediation:

> [The plaintiff] does not assert that the mediation was particularly complex or that his attorneys handled distinct aspects of the mediation. The court, moreover, believes that the case was relatively straightforward and involved a limited set of facts. It therefore concludes that the mediation could easily have been handled by [one attorney] alone . . . .

*Mardirossian*, 457 F. Supp. 2d at 1050. Moreover, "when attorneys hold a telephone or personal conference with one another, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys." *Pollard v. City of Portland*, No. CV-01-114-ST, 2001 WL 34042624, at *5 (D. Or. Aug. 7, 2001); *see also Welch*, 480 F.3d at 949 (upholding the district court's decision to reduce the hours billed for intra-office conferences); *Precision Seed Cleaners v. Country Mut. Ins. Co.*, No. 03:10-cv-01023-HZ, 2013 WL 5524689, at *18 (D. Or. Oct. 1, 2013) (citing cases).

In this case, the billing records reveal numerous instances of duplicative billing, including multiple attorneys billing for the same mediation, the same conference with opposing counsel, or the same intra-office conference. There is nothing in the fee petition justifying, for example, both Steinman and Ellis billing for the time spent in mediation or conferences with the Department of Justice. Thus, after carefully examining the billing records, I find that the

following hours should be deducted on the basis of duplicative billing: 2.10 hours billed by Ellis

on 11/16/2011; .20 hours billed by Ellis on 7/12/2012; .90 hours billed by Ellis on 7/16/2012;

9.00 hours billed by Ellis on 7/26/2012; .40 hours billed by Ellis on 9/10/2012; .50 hours billed

by Ellis on 9/27/2012; 2.50 hours billed by Ellis on 10/4/2012; .30 hours billed by Ellis on

10/9/2012; .40 hours billed by Ellis on 10/11/2012; 10.20 hours billed by Ellis on 10/24/2012;

1.00 hour billed by Ellis on 11/1/2012; .50 hours billed by Ellis on 12/19/2012; .80 hours billed

by Ellis on 1/21/2013; 1.10 hours billed by Ellis on 1/25/2013; .30 hours billed by Aldworth on

2/5/2013; .10 hours billed by Ellis on 2/6/2013; 1.10 hours billed by Ellis on 2/18/2013; .70

hours billed by Ellis on 2/19/2013; 2.00 hours billed by Ellis on 2/21/2013; 1.10 hours billed by

Ellis on 3/1/2013; .80 hours billed by Aldworth on 3/5/2013; 1.20 hours billed by Aldworth on

3/13/2013; 1.50 hours billed by Aldworth on 6/10/2013; .60 hours billed by Ellis on 6/19/2013;

.50 hours billed by Ellis on 6/24/2013; and 7.00 hours billed by Ellis on 8/12/2013.

### 3.    Inadequate Documentation

Third, Multi/Tech argues that the court should reduce the fee petition on the basis that the

billing records contain numerous vague entries. "The party requesting fees for [attorney] work

must submit evidence documenting the hours claimed, and if the documentation is inadequate, or

the claimed hours appear 'excessive, redundant, or otherwise unnecessary,' the court should

reduce the award accordingly." *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 253

n.16 (1985) (Brennan, J., concurring in part and dissenting in part) (citation omitted).  An

attorney "'is not required to record in great detail how each minute of his time was expended,'"

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 437

n.12), but the attorney should identify "the general subject matter of his [or her] time

expenditures," *id.* (quoting *Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1542 (9th Cir. 1992),

*vacated on other grounds*, 984 F.2d 345 (9th Cir. 1993)) (internal quotation mark omitted).

"This District has specifically cautioned against . . . providing vague or otherwise inadequate

descriptions of tasks . . . ." *Old W. Fed. Credit Union v. Skillman*, No. 2:11-cv-01170-SU, 2012

WL 4594256, at *4 (D. Or. Sept. 6, 2012), *citing* Message from the Court Regarding Fee

Petitions, http://www.ord.uscourts.gov/index.php/court-policies-517/

fee-petitions (last updated on 2/6/2013).  In its Message from the Court Regarding Fee Petitions,

the District states:

> [T]he Court frequently sees time billed for items such as
> 'conference,' 'telephone call with . . . ,' or 'correspondence to . . .'
> with no description of the subject of the conference, the call, or the
> correspondence.  This . . . makes it nearly impossible to assess the
> reasonableness of the requested time.  Because the burden to
> document the reasonableness of the requested fees is on the
> attorney requesting fees, fee petitions that fail to support the
> reasonableness of the request due to [vague billing entries] may be
> denied, at least in part.

Message from the Court Regarding Fee Petitions, http://www.ord.uscourts.gov/index.php/

court-policies-517/fee-petitions (last updated on 2/6/2013).

In this case, viewing the billing records in the context of the history of the case, I was

largely able to determine that the hours billed for specific tasks was reasonable.  However, I find

that the following hours should be deducted on the basis of inadequate documentation: 1.30

hours billed by Steinman on 9/22/2011 for "numerous emails with Adrian Brown"; .60 hours

billed by Steinman on 9/28/2011 for "[r]eview emails with Adrian Brown and Moloy Good";

1.30 hours billed by Steinman on 6/6/2012 for "telephone conference with Adrian Brown"; .40

hours billed by Steinman on 9/27/2012 for "review and reply to numerous emails"; .70 hours

Page 12 - FINDINGS AND RECOMMENDATION

billed by Steinman on 10/4/2012 for "telephone conference with Julie Allen at Department of

Justice"; 1.40 hours billed by Steinman on 12/19/2012 for "[e]mails with Adrian Brown" and

"conference with M. Ellis"; 1.10 hours billed by Steinman on 3/6/2013 for "[t]elephone

conference with Adrian Brown"; .30 hours billed by Ellis on 4/9/2013 for "[r]eview

correspondence by co-counsel"; and .20 hours billed by Steinman on 4/11/2013 for "telephone

conference with Adrian Brown."[5]

### 4.   Work Duplicative of Work the Department of Justice Performed

Finally, Multi/Tech argues that, as an intervening plaintiff, the FHCO is not entitled to

recover attorneys' fees for work that was duplicative of work the Department of Justice

performed. Multi/Tech contends that the FHCO's attorneys did not make a substantial

contribution to establishing liability but, rather, merely "show[ed] up at depositions and hearings,

review[ed] the other parties' pleadings and documents, and monitor[ed] as [the Department of

Justice] zealously pursued the unified interests of the [p]laintiffs." Multi/Tech's Resistance,

#122, at 7. Under these circumstances, Multi/Tech argues that the FHCO is not entitled to any

attorneys' fees other than those it already received under the consent order and judgment with the

Montagne defendants.

In response, the FHCO submitted the declaration of Adrian Brown, one of the Assistant

---

[5] Because the FHCO's attorneys often billed for multiple tasks without specifying the amount of time spent on each task, it was not always possible to deduct the amount of time actually spent on the particular task that the attorney inadequately described. In such cases, I assumed that the attorney spent an equal amount of time on each task included in the billing entry. For example, on the 6/6/2012 entry, Steinman billed 2.60 hours for "[c]onference with Moloy Good and work on responses to discovery requests; telephone conference with Adrian Brown." Ex. B, Steinman Declaration, #112-2, at 6. I assumed that Steinman spent an equal amount of time on the two tasks described and deducted 1.30 hours for the inadequately described "telephone conference with Adrian Brown."

United States Attorneys that represented the United States in the case. In her declaration, Brown states that the FHCO was "integrally involved with each step of the case" and that the FHCO's attorneys' "insight and knowledge of the specifics of the case was essential for assisting [Brown] in understanding the issues." Declaration of Adrian Brown ("Brown Declaration"), #126, ¶ 5. Brown goes on to explain that the FHCO's attorneys and the attorneys for the Department of Justice worked to "minimize any possible redundancies" by, for example, dividing up work related to discovery and responding to Multi/Tech's motions for summary judgment. *Id.* ¶¶ 6-7.

I find that Multi/Tech's suggestion that the FHCO "assumed a secondary role" to the Department of Justice, Multi/Tech's Resistance, #122, at 6, is unsupported by the record. Rather, it is clear that the FHCO made a distinct and significant contribution to the case. In addition to sharing the burden of pursuing a claim under the federal Fair Housing Act, the FHCO pursued its own claim for violation of the Oregon Fair Housing Act, a claim not contained in the United States' complaint. Moreover, my own familiarity with the case confirms Brown's assertion that the FHCO's attorneys worked with the Department of Justice to minimize duplication of work. For instance, rather than fully responding to Multi/Tech's motion for summary judgment on the FHCO's claims, the FHCO largely adopted and incorporated the United States' arguments relating to the federal Fair Housing Act and focused its efforts on responding to Multi/Tech's arguments relating to the Oregon Fair Housing Act. *See* FHCO's Resistance to Multi/Tech's Motion for Summary Judgment, #70.

I am concerned, however, by the sheer number of billing entries for conferences between the FHCO's attorneys and the attorneys for the Department of Justice. Complicating this issue is the FHCO's attorneys' practice of billing for multiple tasks without specifying the amount of time

Page 14 - FINDINGS AND RECOMMENDATION

spent on each task, making it impossible to determine the number of hours actually spent

conferencing with the Department of Justice. My concern is fueled, in part, by Brown's

statement that this case was her first design-and-construction case and that, as a result, the

FHCO's attorneys were "an essential resource throughout the prosecution of this case." Brown

Declaration, #126, ¶ 8. While I appreciate that the FHCO's attorneys and the attorneys for the

Department of Justice worked together closely and that, as a result, frequent conferral was

necessary, the FHCO should not be permitted to shift to Multi/Tech fees incurred in "educating"

the Assistant United States Attorney on design-and-construction cases. Under the circumstances,

I find that a 10% reduction in the fees incurred in litigating the merits of the case is warranted to

account for excessive time spent in conferences with the Department of Justice. *See Gonzalez v.*

*City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (finding that a "district court can impose a

small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and

without a more specific explanation" (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106,

1112 (9th Cir. 2008)) (internal quotation mark omitted)).

### 5.    Summary

In light of the foregoing, I recommend excluding 8.90 hours of Steinman's requested time,

47.30 hours of Ellis's requested time, and 26.30 hours of Aldworth's requested time on the

grounds that such hours were block billed, duplicative, or inadequately documented.

Furthermore, I recommend reducing the total amount of fees incurred in litigating the merits by

10% to account for excessive time spent conferencing with the Department of Justice attorneys.

### B.    Reasonable Rate

At the second step of the lodestar analysis, the court must determine the attorneys'

Page 15 - FINDINGS AND RECOMMENDATION

reasonable hourly rates.  It is well settled within the Ninth Circuit and in this District that:

> The prevailing market rate in the community is indicative of a
> reasonable hourly rate.  The fee applicant has the burden of
> producing satisfactory evidence, in addition to the affidavits of its
> counsel, that the requested rates are in line with those prevailing in
> the community for similar services of lawyers of reasonably
> comparable skill and reputation.

*Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262-63 (9th Cir. 1987) (citing *Blum v. Stenson*, 465

U.S. 886, 895-97 & n.11 (1984)) (footnote omitted) (internal citation omitted).  Here, the FHCO

requests that Steinman's time be compensated at his current hourly rate of $375; Ellis's time be

compensated at an hourly rate of $95 for hours expended as a law clerk and at his current hourly

rate of $260 for hours expended as a lawyer; and Aldworth's time be compensated at his current

hourly rate of $195.

Before turning to consider the reasonableness of the requested rates, I note that all hours

expended in connection with litigating this action were expended between July 2006 and

September 2013.  In its memorandum in support of the motion for attorneys' fees, the FHCO

contends that the court should use the FHCO's attorneys' current, as opposed to historic, hourly

rates.  *See* FHCO's Memo. in Support of Motion for Attorneys' Fees, #111, at 5-6 (citing

*Missouri v. Jenkins*, 491 U.S. 274, 277 (1989)).  The Ninth Circuit has "long recognized that

district courts have the discretion to compensate prevailing parties for any delay in the receipt of

fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss

of the use [of] funds."  *Gates*, 987 F.2d at 1406; *see also Christensen v. Stevedoring Servs. of

Am.*, 557 F.3d 1049, 1055-56 (9th Cir. 2009) (noting that a district court may use a lawyer's

current, rather than historic, hourly rate to compensate for delay in payment); *Anderson v.*

*Director, OWCP*, 91 F.3d 1322, 1324 (9th Cir. 1996) (same). In this case, however, the FHCO

offers no reason warranting an adjustment for delay in payment. While the FHCO's attorneys

began work on the case in 2006, most of the work was performed between September 2011 and

September 2013. I find that this delay in payment "is not so egregious or extraordinary as to

require a delay enhancement." *Christensen*, 557 F.3d at 1056 (finding that the district court did

not abuse its discretion in declining to award a delay adjustment to account for a two-year delay

in payment). Accordingly, I will use historic, as opposed to current, hourly rates in calculating

the lodestar.

### 1.    Rate for Steinman

In a sworn affidavit, Steinman provides evidence that he began practicing law in 1995

and has "practiced almost exclusively in the area of plaintiff civil litigation." Steinman

Declaration, #112, ¶¶ 2-3. Steinman states that "[a] large part of [his] practice is devoted to

disability law and fair housing litigation" and that he has represented the FHCO in approximately

sixty-one design-and-construction cases under the federal Fair Housing Act. *Id.* ¶ 3. Steinman

provides further evidence that design-and-construction cases are particularly complex and that

there are few attorneys nationally that accept such cases. Stephen M. Dane, a Washington, D.C.

attorney who has handled a number of Fair Housing Act cases, submitted a declaration attesting

to the "unique litigation issues" that make design-and-construction cases "more challenging than

other types of fair housing litigation cases." Declaration of Stephen M. Dane, #113, ¶ 8. Pegge

McGuire, the Executive Director of the FHCO, confirms that few attorneys are willing to accept

design-and-construction cases, noting that "Steinman is the only attorney [the FHCO has] found

in Oregon who is able and willing to litigate these types of claims." Declaration of Pegge

Page 17 - FINDINGS AND RECOMMENDATION

McGuire, #118, ¶ 2. Finally, Edward Johnson, an Oregon attorney with experience litigating fair housing issues, submitted a declaration stating that Steinman's requested hourly rate of $375 "is reasonable because of his experience handling fair housing cases, his reputation in the community, and his knowledge of the highly technical and specialized field of design and construction litigation." Declaration of Edward Johnson ("Johnson Declaration"), #116, ¶ 5.

A useful starting point for determining a reasonable hourly rate is the Oregon State Bar Economic Survey, which provides information as to the rates actually charged by Oregon-area attorneys. *See, e.g., N. Am. Specialty Ins. Co. v. Access Equip. Rental, LLC*, No., 3:12-cv-02105-HZ, 2013 WL 3287124, at *1 (D. Or. June 28, 2013) ("Judges in the District of Oregon use the Oregon State Bar Economic Survey . . . as a benchmark for assessing the reasonableness of hourly billing rates."). The Oregon State Bar Economic Survey is conducted every five years, with the last two surveys conducted in 2007 and 2012. Accordingly, I begin my analysis with these surveys. When this case began in 2006, Steinman had approximately eleven years of experience. According to the 2007 Oregon State Bar Economic Survey, which provides information as to rates actually charged by Oregon attorneys in 2006, the median hourly rate for legal services charged by Portland-area attorneys with ten to twelve years of experience was $250, with a 25th percentile rate of $165, a 75th percentile rate of $290, and a 95th percentile rate of $334. In this case, while I am cognizant of Steinman's credentials and his specialized knowledge of design-and-construction cases, I find that an hourly rate above the median rate charged by Portland-area attorneys is not warranted. Specifically, Steinman had the aid of the Department of Justice in pursuing this action and, moreover, I see no evidence that Steinman's expertise and experience in design-and-construction cases greatly improved his efficiency.

Page 18 - FINDINGS AND RECOMMENDATION

Accordingly, I find that Steinman should be compensated at the median hourly rate for attorneys with ten to twelve years of experience in 2006—that is, $250.

Next, I look at the 2012 Oregon State Bar Economic Survey, which provides useful information as to rates actually charged by Oregon attorneys in 2011. In 2011, Steinman had sixteen years of experience. According to the 2012 Oregon State Bar Economic Survey, the median hourly rate for legal services charged by Portland-area attorneys with sixteen to twenty years of experience in 2011 was $250, with a 25th percentile rate of $200, a 75th percentile rate of $300, and a 95th percentile rate of $380. As the FHCO notes in its memorandum in support of the motion for attorneys' fees, however, these rates appear to be "a bit of an aberration." FHCO's Memo. in Support of Motion for Attorneys' Fees, #111, at 6. That is, the rates charged by attorneys with thirteen to fifteen years of experience in 2011 are significantly higher, with a median rate of $300, a 25th percentile rate of $261, a 75th percentile rate of $379, and a 95th percentile rate of $435. Given the anomalous rates for attorneys with sixteen to twenty years of experience, I find that a more accurate means of determining Steinman's reasonable hourly rate for 2011 is to average the rates charged by attorneys with thirteen to fifteen years of experience and the rates charged by attorneys with twenty-one to thirty years of experience.[6] By this method, the median hourly rate charged by attorneys with sixteen to twenty years of experience would be $316.50, with a 25th percentile rate of $256, a 75th percentile rate of $389, and a 95th percentile rate of $452.50. As with the 2006 rate, I find that, while Steinman 's credentials are

---

[6] According to the 2012 Oregon State Bar Economic Survey, the median hourly rate for legal services charged by Portland-area attorneys with twenty-one to thirty years of experience was $333, with a 25th percentile rate of $251, a 75th percentile rate of $399, and a 95th percentile rate of $470.

noteworthy, his particular role in this case warrants a rate no higher than the median rate charged by Portland-area attorneys with sixteen to twenty years of experience. Accordingly, I find that the hours Steinman expended in 2011 should be compensated at a rate of $316.50.

Next, to determine Steinman's reasonable hourly rates for 2008 through 2010,[7] I shall assume that Steinman's hourly rate steadily increased each year between 2006 and 2011. Applying this method, I find that Steinman's reasonable hourly rates are as follows: $276.60 for 2008; $289.90 for 2009; and $303.20 for 2010.

Finally, to determine Steinman's reasonable hourly rate for 2012, I shall adjust the 2011 rate for inflation by multiplying Steinman's 2011 rate by the consumer price index for urban consumers ("CPI-U") for 2012 and then divide the resulting figure by the CPI-U for 2011. Likewise, to determine Steinman's reasonable hourly rate for 2013, I shall adjust the 2012 rate for inflation by multiplying Steinman's 2012 rate by the CPI-U for 2013 and then divide the resulting figure by the CPI-U for 2012. I take judicial notice that the United States Department of Labor's Bureau of Labor Statistics has published a CPI-U for the Western states of 227.485 for 2011, 232.376 for 2012, and 235.824 for 2013. On this method, Steinman's reasonable hourly rate for 2012 would be $323.30 and his reasonable hourly rate for 2013 would be $328.10.

In summary, I find that Steinman's time should be compensated at the following hourly rates: (1) $250 for hours expended in 2006; (2) $276.60 for hours expended in 2008; (3) $289.90 for hours expended in 2009; (4) $303.20 for hours expended in 2010; (5) $316.50 for hours expended in 2011; (6) $323.30 for hours expended in 2012; and (7) $328.10 for hours expended in 2013.

---

[7] There were no hours billed in 2007.

2.      **Rate for Ellis**

a.      **Law Clerk**

In 2006, when this case began, Ellis was a law clerk working under the supervision of

Steinman. Declaration of Matthew C. Ellis ("Ellis Declaration"), #117, ¶ 5. The FHCO requests

an hourly rate of $95 for the 1.7 hours of work Ellis performed as a law clerk. I find that such

rate is commensurate with the rates charged by law clerks in the Portland area. *See Precision*

*Seed Cleaners*, 2013 WL 5524689, at *13 (finding that $110 was a reasonable hourly rate for a

law clerk and citing cases). Accordingly, I find that Ellis's time should be compensated at an

hourly rate of $95 for work performed as a law clerk.

b.      **Attorney**

In a sworn affidavit, Ellis provides evidence that he began practicing law in 2007 and that

he has "practiced almost exclusively in the area of plaintiff civil litigation," including "civil rights

law, fair housing law, employment law and general civil litigation." Ellis Declaration, #117,

¶¶ 2-3. Ellis further sates:

> From the time I began work as a law clerk at Kell, Alterman and
> Runstein, L.L.P. in 2006 to present, I have researched, drafted and
> administratively filed over 50 Fair Housing Act design and
> construction complaints under the direction of Dennis Steinman. I
> have actively participated in many federal investigations into Fair
> Housing Act design and construction violations and attended a
> large number of on-site evaluations of the properties at issue that
> are conducted by experts retained by the federal government. I
> also recently taught an hour long CLE on the Fair Housing Act's
> design and construction provisions to Oregon lawyers looking to
> expand their practices.

*Id.* ¶ 3. In his declaration in support of the fee petition, Oregon attorney Johnson attests to the

reasonableness of Ellis's requested rate, stating that $260 per hour "is reasonable for an associate

Page 21 - FINDINGS AND RECOMMENDATION

attorney in Portland who has been practicing for six years and has experience litigating fair housing cases." Johnson Declaration, #116, ¶ 6.

According to the 2012 Oregon State Bar Economic Survey, the median hourly rate for legal services charged by Portland-area attorneys with four to six years of experience in 2011 was $218, with a 25th percentile rate of $160, a 75th percentile rate of $250, and a 95th percentile rate of $295. As described above, an appropriate method for adjusting the foregoing rates for inflation in order to estimate the corresponding rates prevalent in the Portland legal community in 2012 is to multiply the 2011 rates by the CPI-U for 2012, then divide the resulting figures by the CPI-U for 2011. On this method, the estimated median hourly rate for legal services charged by Portland-area attorneys with four to six years of experience in 2012 would be $222.69, with an estimated 25th percentile rate of $163.44, an estimated 75th percentile rate of $255.38, and an estimated 95th percentile rate of $301.34. To determine the estimated 2013 rates, I shall adjust the 2012 rates for inflation by multiplying the 2012 rates by the CPI-U for 2013 and then divide the resulting figures by the CPI-U for 2012. On this method, the estimated median hourly rate for legal services charged by Portland-area attorneys with four to six years of experience in 2013 would be $225.99, with an estimated 25th percentile rate of $165.87, an estimated 75th percentile rate of $259.17, and an estimated 95th percentile rate of $305.81.

As with Steinman, I find that Ellis is not entitled to an hourly rate above the median rate charged by Portland-area attorneys with four to six years of experience. While Ellis possesses specialized knowledge of design-and-construction cases, the results in this case were achieved through the joint effort of the FHCO's attorneys and the Department of Justice. Given Ellis's role in this case, I find that the median rate is appropriate. Accordingly, I find that Ellis's time should

be compensated at an hourly rate of $218 for hours expended in 2011, $222.69 for hours expended in 2012, and $225.99 for hours expended in 2013.

### 3.    Rate for Aldworth

In a sworn declaration, Aldworth provides evidence that, since graduating from law school in 2011, he has been an associate attorney at Kell, Alterman & Runstein, LLP. Declaration of Scott Aldworth, #115, ¶ 2.  Aldworth states that his "practice emphasizes civil rights law, fair housing law, employment law and general civil litigation" and that he has "worked on dozens of cases involving disability law and civil rights law under the direction of . . . Steinman, including approximately nine cases brought under the Fair Housing Act." *Id.* ¶ 3. In his declaration in support of the fee petition, attorney Johnson states that he believes that Aldworth's hourly rate of $195 is reasonable "for an associate attorney in Portland who has been practicing for two years and has experience litigating fair housing cases." Johnson Declaration, #116, ¶ 7.

According to the 2012 Oregon State Bar Economic Survey, the median hourly rate for legal services charged by Portland-area attorneys with zero to three years of experience in 2011 was $175, with a 25th percentile rate of $163, a 75th percentile rate of $198, and a 95th percentile rate of $246.  Using the method outlined above to estimate the rates charged by Portland-area attorneys in 2013, when Aldworth worked on this case, the estimated median hourly rate for legal services charged by Portland-area attorneys with zero to three years of experience in 2013 would be $181.41, with an estimated 25th percentile rate of $168.97, an estimated 75th percentile rate of $205.26, and an estimated 95th percentile rate of $255.02.

The record contains no evidence suggesting that Aldworth has any expertise or special

Page 23 - FINDINGS AND RECOMMENDATION

skill that significantly aided the FHCO in achieving success and I find that an hourly rate of $195 is not reasonable under the circumstances of this case. Indeed, the FHCO offers no reason why Aldworth's hourly rate should exceed the median rate for Portland-area attorneys of like vintage. I therefore find that the hourly rate at which Aldworth's time expenditures should be compensated is $181.41.

## III.    Calculation and Adjustment of the Lodestar Figure

### A.    Merits Fees

#### 1.    Lodestar Calculation

To calculate the lodestar, I multiply the number of hours reasonably expended on the merits of the litigation by the reasonable hourly rate:

| Attorney | Year | Hours | Hourly Rate | Fees |
|---|---|---|---|---|
| Steinman | 2006 | 1.80 | $250.00 | $450.00 |
| | 2008 | 8.90 | $276.60 | $2,461.74 |
| | 2009 | 1.90 | $289.90 | $550.81 |
| | 2010 | 2.25 | $303.20 | $682.20 |
| | 2011 | 41.45 | $316.50 | $13,118.93 |
| | 2012 | 82.15 | $323.30 | $26,559.10 |
| | 2013 | 81.50 | $328.10 | $26,740.15 |
| | | | | |
| Ellis | 2006 | 1.70 | $95.00 | $161.50 |
| | 2011 | 1.00 | $218.00 | $218.00 |
| | 2012 | 25.90 | $222.69 | $5,767.67 |
| | 2013 | 23.60 | $225.99 | $5,333.36 |
| | | | | |

| Aldworth | 2013 | 16.60 | $181.41 | $3,011.41 |
|---|---|---|---|---|
| | | | | |
| | | | Total | $85,054.86 |
| Minus 10% Reduction for Conferences with DOJ: | | | | - $8,505.49 |
| | | | Lodestar | $76,549.37 |

### 2.    *Kerr* Factors

After the court calculates the lodestar, it "may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (internal citation omitted). These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See, e.g., id.* (citing *Kerr*, 526 F.2d at 70). Only those factors that are applicable need be addressed. *See, e.g., Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069, 1073 (9th Cir. 1983).

It is within the discretion of this court to adjust the lodestar figure either: (1) downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable, *Hensley*, 461 U.S. at 435-36; or (2) upward in "rare" and "exceptional" cases, *Pennsylvania*, 478 U.S. at 565. The presumption, however, is that the lodestar figure represents a reasonable fee.

*See Miller v. L.A. Cnty. Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987).

In this case, the FHCO argues that an upward adjustment is warranted for two reasons. First, the FHCO contends that the court should adjust the lodestar figure because "[c]ases involving the design and construction provisions of the Fair Housing Act are undesirable" and, consequently, "there are very few attorneys who are willing to accept design and construction cases." FHCO's Memo. in Support of Motion for Attorneys' Fees, #111, at 8-9. Second, the FHCO argues that the court should adjust the lodestar figure because of the "exceptional result that was achieved." *Id.* at 10. Specifically, the FHCO contends that it "received essentially everything that it sought in bringing this claim," including full recovery of its damages, a $64,000 fund for victims of the discriminatory housing practices, and "renovations to the property to bring it into compliance with the design and constructions provisions of the Fair Housing Act." *Id.* at 9-10. Given these factors, the FHCO requests a multiplier of 1.75.[8]

I find that neither of the FHCO's asserted bases for a multiplier—that is, the undesirability of the case and the exceptional results achieved—warrant an upward adjustment of the lodestar figure. First, I find that, while the undesirability of the case is a relevant factor that may support an upward adjustment in some cases, it does not support an adjustment in this case. Much of the evidence the FHCO submits in support of its contention that design-and-construction cases are undesirable is premised on the inherent risk of a contingency-fee case. Even if I were to find that this alone made this case "undesirable," the FHCO has submitted no evidence that it accepted this case on a contingency-fee basis.

---

[8] The FHCO requests that the court multiply the total fee award by 1.75. The Ninth Circuit, however, has "held it is an abuse of discretion to apply a multiplier to work on a fee petition." *Hasbrouch v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989).

Second, I disagree with the FHCO that an upward adjustment is warranted based on the results achieved. While I do not doubt that the results achieved are exceptional and that the public is greatly served by the FHCO's commitment to ending housing discrimination, this case was a joint effort between the FHCO and the Department of Justice. It would be inequitable to award the FHCO a multiplier for exceptional results when the Department of Justice played an important role in achieving such results.

In sum, after considering all of the *Kerr* factors, I find that this is not a "rare" and "exceptional," *Pennsylvania*, 478 U.S. at 565, case where an upward adjustment of the lodestar is warranted. Rather, I find that the proper amount of attorneys' fees incurred in litigating the merits of the case is the lodestar amount, or $76,549.37.

**B.**      **Fees on Fees**

1.      **Lodestar Calculation**

As before, to calculate the lodestar, I multiply the number of hours reasonably spent in preparing the fee petition by the reasonable hourly rate:

| Attorney | Hours | Hourly Rate | Fees |
|----------|-------|-------------|------|
| Steinman | 6.80 | $328.10 | $2,231.08 |
| Ellis | 2.30 | $225.99 | $519.78 |
| Aldworth | 25.30 | $181.41 | $4,589.67 |
| | | Lodestar | **$7,340.53** |

2.      **Fees on Fees**

The Ninth Circuit has approved arithmetic reduction of an award of "fees-on-fees" by the ratio of the fees actually awarded in the underlying fee dispute to the amount therein requested.

*See, e.g.*, *Thompson v. Gomez*, 45 F.3d 1365, 1366-68 (9th Cir. 1995). I see no reason to deviate from this reasonable procedure, and I find that the lodestar figure for fees-on-fees should be reduced by the ratio of the lodestar figure calculated for merits fees to the amount of fees requested in the FHCO's fee petition. Here, the FHCO requested $166,464.56[9] in total compensation for fees in connection with litigating the merits of this action, whereas the lodestar calculation yields an appropriate award of $76,549.37, or approximately 46% of the amount requested. I find, therefore, that the lodestar figure for fees-on-fees should be reduced to $3,376.64.

### C.   Apportionment

Finally, although neither of the parties request that I apportion fees between the Montagne defendants and Multi/Tech, I find that apportionment is appropriate in this case. The Ninth Circuit has "prescribed apportionment of attorney's fees when the time expended by the plaintiff in pursuing each defendant was grossly unequal." *Corder v. Gates*, 947 F.2d 374, 383 (9th Cir. 1991) (emphasis omitted); *see also El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1075 (9th Cir. 2005) ("In deciding whether apportionment is mandated, the court focuses on the time expended by the plaintiff in pursuing each defendant, rather than on relative liability."); *Jones v. Espy*, 10 F.3d 690, 691 (9th Cir. 1993) (noting that apportionment is mandatory "when the time expended against each defendant is disproportionate . . . to ensure that a defendant is not liable for a fee

---

[9] The FHCO did not divide its request between merits fees and fees on fees. Analysis of the billing records reveals that the FHCO sought $117,979.75 in fees incurred prior to beginning work on the fee petition. The FHCO sought a multiplier of 1.75, totaling $206,464.56 in fees incurred in litigating the merits. The FHCO then proposed deducting $40,000 to account for the $40,000 the Montagne defendants already paid in attorneys' fees pursuant to their settlement agreement, yielding a total request of $166,464.56 for work performed on the merits of the litigation.

award greater than the actual fees incurred against that defendant"). For example, in *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118 (9th Cir. 1981), the plaintiffs filed an action against state and federal defendants arising out of the construction of a freeway that would have displaced plaintiffs or damaged their neighborhood. *Id.* at 1120. The plaintiffs ultimately prevailed against the state and federal defendants and sought attorneys' fees. *Id.* at 1125. The federal defendants, however, were immune from an attorney-fee award. *Id.* The district court "determined that of the total amount of time and services rendered by plaintiffs' counsel, 75% thereof was attributable to the suit as against the state defendants" and, consequently, awarded plaintiffs 75% of the total amount of attorneys' fees incurred in the litigation. *Id.* The Ninth Circuit upheld the district court's decision, finding that plaintiffs were not entitled to attorneys' fees incurred in prosecuting their claims against the federal defendants and that the 75% estimate was appropriate under the circumstances. *Id.* at 1125-26.

Here, apportionment of the fees between the Montagne defendants and Multi/Tech is justified for two reasons. First, it is inequitable to force Multi/Tech to bear the burden or permit it to accept the benefit of the FHCO's settlement of its claim for attorneys' fees against the Montagne defendants. That is, the FHCO may have settled its claim for attorneys' fees against the Montagne defendants for more or less than it was worth. In either case, Multi/Tech was not a party to that settlement and the FHCO's decision to settle its claim for attorneys' fees against the Montagne defendants should not alter the amount of attorneys' fees for which Multi/Tech is liable.

Second, as in *Southeast Legal Defense Group*, the FHCO's attorneys expended unequal amounts of time on the claims against the Montagne defendants and the claims against

Multi/Tech. Unlike the Montagne defendants, Multi/Tech filed a motion for summary judgment to which the FHCO was required to respond; declined to settle after the first two days of mediation, thereby requiring a third day of mediation; and did not negotiate an award of attorneys fees as part of the settlement of the claims against it, thus requiring the FHCO to prepare a fee petition.

Accordingly, I find that it is necessary to determine what portion of the attorneys' fees incurred in this case are properly attributable to Multi/Tech. After analyzing the billing records, I find that Multi/Tech should be responsible for 57% of the fees incurred in litigating the merits of the case and all of the fees incurred in preparing the fee petition. I find that 57% is an appropriate portion of the attorneys' fees based on the following: the FHCO's attorneys expended 249.55 hours on this case prior to the settlement with the Montagne defendants and 39.20 hours following the settlement with the Montagne defendants but prior to beginning work on the fee petition. Given my familiarity with the case, I find that it is reasonable to hold Multi/Tech responsible for approximately half of the work performed prior to the settlement with the Montagne defendants and for all of the work after the Montagne defendants settled. Accordingly, I find that Multi/Tech should be required to pay $43,633.14 in merits fees and $3,376.64 in fees-on-fees, yielding a total of $47,009.79.

## CONCLUSION

Based on the foregoing, the FHCO's motion for attorneys' fees (#110) should be granted in part and denied in part. The district court should award the FHCO attorneys' fees in the amount of $47,009.79.

/ / /

Page 30 - FINDINGS AND RECOMMENDATION

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 10th day of March, 2014.

Honorable Paul Papak
United States Magistrate Judge